THE NORTH HUDSON MUTUAL BUILDING AND LOAN ASSOCIATION, Respondent, vs. CHILDS and another, Appellants.

*March 28 — June 15, 1892.*

*Corporations: Negligence and unauthorized acts of officers: Liability of directors: Action at law or in equity? Evidence: Appeal.*

1. An action by a corporation against its president and treasurer for negligence or misconduct in their respective offices and also as *ex officio* members of the board of directors, the *gravamen* of the complaint being that the defendants have exceeded their powers as president and treasurer in dealing with the property of the corporation and have usurped the powers of the board of directors without the knowledge, consent, or authority of such board or of the stockholders, should be treated as an equitable action.

2. Where the directors held no meetings and gave no attention to their duties, but left all the affairs of the corporation to the management of the president, secretary, and treasurer, who conducted such affairs in good faith, though negligently and in the exercise of powers belonging solely to the board of directors, such officers can-

not be charged as *ex officio* members of such board, and neither of them is liable for the negligence or unauthorized acts of the others in which he did not participate.

3. Mere proof of failure to collect certain moneys due to the corporation is not proof that they were lost.

4. In respect to losses alleged to have been sustained because of insufficient payments to the corporation on certain accounts, a report of the secretary is not competent evidence against the president and treasurer to charge them with such losses or to show that no more was paid to him than he reported.

5. It was error for the trial court to adopt, without judicial examination as to its accuracy and justice, as a basis of judicial action against the defendants, the report of an expert accountant employed by the corporation to examine into its accounts and the extent of its losses through the alleged negligence and unauthorized acts of the defendants.

6. Cases brought to this court by appeal should have been properly examined and passed upon by the trial court, and this court will not assume the burden of that duty in the first instance.

7. Where the trial is by the court without a jury the evidence may be reviewed upon appeal although no motion for a new trial was made before judgment.

APPEAL from the Circuit Court for *St. Croix* County.

This action was brought to recover against the defendants, *Childs* and *Denniston*, losses sustained, as it is alleged, by the plaintiff to the amount of $28,000 by reason of gross neglect, mismanagement, and inattention to their duties while they were respectively president and treasurer of the plaintiff, and as such *ex officio* members of its board of directors. The complaint states that the plaintiff is, and has been since December 6, 1876, a corporation of this state for the sole purpose of accumulating funds to be loaned to its members to enable them to purchase real estate, build houses, satisfy mortgages, or make such other investments as the stockholders should deem proper; that its officers, to be elected by the stockholders at each annual meeting, are a president, vice president, treasurer, secretary, attorney, and seven directors who, with the president, treasurer, and

secretary, form a board of directors for the transaction and management of the affairs of the corporation; that the defendants, *Childs* and *Denniston*, were president and treasurer as aforesaid of the plaintiff from February, 1882, until February, 1887, and entered upon the discharge of their respective duties as such, and during that time were members of the board of directors of said corporation, and assumed to and did transact all the business of the said corporation *without the authority, approval, or consent* of its board of directors; and, after setting out in general terms their duty to perform the duties of their said offices with ordinary care, prudence, and diligence, that it was particularly their duty to see to it and require that the secretary of the corporation should give bond for the faithful performance of his duties; that one F. H. Harvey, elected to that office in the year 1882, held and assumed to discharge its duties down to the year 1886 without having given any bond, or having been required to give any, for the faithful performance of his duties, as required by the constitution and by-laws; all of which was through the gross negligence of the defendants.

The complaint sets forth fourteen separate "causes of action" (so called) for losses sustained by the corporation as therein specially stated, on account of the gross neglect, mismanagement, and inattention to duty of the defendants, and there was annexed to the complaint a bill of particulars thereof. Separate answers of the defendants admitted the existence of the plaintiff as a corporation, but denied each and every other allegation of the complaint.

A trial by jury was waived, and the cause was tried before the court. The testimony, oral and documentary, is exceedingly voluminous, and that part of it relating to the losses sustained by the corporation consisted almost wholly of the testimony of an expert accountant, one Mr. Somers, who it appeared had had considerable experience in the management of the business affairs of similar corporations.

The finding of the court, in substance, was that the defendants were such president and treasurer, respectively, of the plaintiff, and *ex officio* members of its board of directors, as above stated. That the corporation had a code of by-laws in force during all the said time, a copy of which is embraced in the finding.

It was provided therein, among other things, that the stock of the plaintiff should be issued at such times and such separate series, in such amounts, and under such regulations, as the association might determine. Stockholders were to sign a writing pledging them to pay punctually monthly dues on their shares, and such fines and interest on loans as they might become liable for. If a stockholder neglected or refused to pay dues, interest, and fines, his shares might be declared forfeited by the board of directors, and the same should revert to the association, and the secretary should sell them at public auction, etc. Provisions for withdrawal from the corporation by consent of the board of directors were adopted, and the member withdrawing was entitled to receive the amount of monthly payments paid in on his shares, and any share of gain made by the association which, by any resolution of the board of directors, he might be entitled to receive. And provisions were made in like manner for any stockholder who had received loans to withdraw in like manner on paying the sum loaned. The loan of funds in the treasury was subject to be bid for at any meeting of the association, the person offering the highest premium to be the successful bidder, which was to be then paid by him or deducted from the sum loaned. Loans might be made of the funds of the corporation to any stockholder not exceeding two thirds the amount actually paid in on each share, and might be secured by transfer of stock to the corporation as collateral security. In addition it was the duty of the board of directors to make investment of any funds of the corporation

in such manner as in their opinion should be safe and most to the interests of the association, but no such loan was to be made without the consent of at least two thirds of the entire board of directors first obtained and expressed in writing. Loans were to be made if the security was satisfactory to the board of directors. Parties having loaned funds might prepay the same on such terms as the board of directors might determine.

Sec. 4 of art. VI of the by-laws, for the release of mortgages, is as follows:

"Any member desiring to prepay his loan may do so at any time on the following terms: From the full amount or face of the loan there shall be deducted — *first*, one eighth of the premium or bonus for each unexpired year of matured stock, and a *pro rata* amount for each fraction of a year, allowing eight years as the period for the maturity of the stock from its issue; *second*, the full amount of dues paid on his stock, together with fifty per cent. of the apparent profits to each one hundred dollars apparent value, or *pro rata* per cent. for any apparent value greater or less than one hundred dollars; and the stock on which the said loan is based shall then be canceled: *provided*, that one month's notice of such prepayment, or the payment of one month's dues and interest in advance, shall be required."

"EXPLANATION. The meaning and intent of the fifty per cent. apparent profits to each one hundred dollars of apparent value, and a *pro rata* per cent. for a greater or less sum, is that to the first ten dollars of apparent value five per cent. of the profits that help to compose it is allowed, and five per cent. additional to each additional ten dollars of apparent value,— that is, twenty dollars, ten per cent.; thirty dollars, fifteen per cent.; forty dollars, twenty per cent.; one hundred dollars, fifty per cent.; two hundred dollars, one hundred per cent., or all the profits; and a *pro rata* share for a greater or less value, taking the average

The North Hudson Building and Loan Ass'n vs. Childs and another.

rate of profits as the basis for an approximate estimate of any profits accruing since the last annual or semi-annual estimate: *provided*, that the stock of any series may be used to pay loans with the profits as above stated, without regard to the series upon which the loan is made: and provided, further, that a part or the whole of any loan may be thus paid by shares, one share or more."

The officers hereinbefore mentioned to be elected were required to be stockholders, and to be elected by such, and, with the president, vice president, treasurer, and secretary, formed a board of directors *for the transaction and management of the affairs* of the corporation, with power to adopt all rules and regulations necessary in the discharge of their duties and for the government of the board, not inconsistent with the by-laws. The duties of the president, among other things, were to sign all certificates of stock and orders on the treasurer for the payment or appropriation of moneys ordered by the board of directors, and to perform all other duties appertaining to his office. It was the duty of the treasurer to receive all moneys as soon as paid into the association, pay all orders of the board of directors if signed by the president and attested by the secretary, have charge of all deeds, bonds, mortgages, contracts, and other securities belonging to the corporation, and keep a correct account of all moneys received and paid out, and make a monthly report to the association. The secretary was required to keep correct minutes of the proceedings of the stockholders and board of directors in a book or books kept for that purpose, to keep accurate accounts with the stockholders, attest certificates of stock and all orders drawn upon the treasurer for the payment or appropriation of moneys ordered by the board of directors, and to notify the directors of all stated or special meetings of the board; to keep the accounts, books, and papers of the corporation, except those in charge of the treasurer; and be prepared

at all times to inform the stockholders of the state of the financial concerns of the association, and to perform such other duties as might be required of him, and to give bonds for the faithful performance of his duties in the *sum of $1,000. Officers elected are to continue in office until their successors are appointed.

A system of fines is provided for by art. IX, and directors, for being absent from regular or special meetings, are subject to fine in each case of fifty cents. Meetings of the association were required to be held on the fourth Thursday evening of every month for the payment of dues, interest, fines, and other business; eleven members to constitute a quorum, but a less number might pay dues and adjourn. Special meetings might be called by the president on the written request of five members. Stated monthly meetings of the board of directors are required to be held on the next Tuesday after the meeting of the association in each month, for the purpose of loaning the funds of the corporation, as well as other necessary business. These meeting are to be open to the stockholders, as well as the proceedings of the board of directors, for inspection. Stated annual meetings of the stockholders are to be held on the fourth Thursday in February in each year, when the board of directors are required to submit a report of their proceedings for the previous year, and a statement of the condition of the association. Special meetings of the directors might be called upon the written request of two directors, of which meeting all must have written notice, and seven to constitute a quorum. It was required that a committee of three should be appointed by the president at the annual meeting to examine the books and vouchers of the treasurer and secretary, and report every six months whether they are regular, and the action of those officers satisfactory. Provisions were made by which the directors, in a certain contingency, had power to require any member or members who had

not previously borrowed from the association to surrender his or her stock upon being paid the surrender value thereof, so as to prevent the funds being idle or unproductive.

The court further found, among other things, that during the time the defendants were officers of the corporation one F. H. Harvey was secretary of it; that the business of the corporation was conducted by these defendants and the said Harvey; that during all of said time there is no record of any meeting of the board of directors, nor is there any record of the proceedings of any stockholders' meetings, except that it appears that stockholders' meetings were held from time to time, but what business was done, if any, does not appear from any written record. The court found that no directors' meetings were held during said time, and that the business of such corporation, which consisted of issuing stock, making loans, withdrawing and canceling stock, accepting prepayment of loans, etc.,— in fact all of the business of the corporation,— was transacted *without any direction of the board of directors, by the defendants and Harvey;* that Harvey gave no bonds, except for one year, 1881, and no committee was appointed to examine the secretary's book and report thereon; and that the whole business of the corporation appeared to have been conducted negligently and, in a great many respects, in total disregard of the requirements of the by-laws. That, as a result of such negligence, the plaintiff has suffered loss and damage as specified. That Harvey was a man of very little financial standing, but appeared to merit the confidence of the defendants, except as far as it otherwise appeared from his neglect and carelessness in the management of the affairs of the corporation. That he died insolvent in March, 1887, and these defendants soon after resigned.

The court further found that the defendants, during the time they so held their said offices, were not guilty of any

intentional wrong-doing, and did not in any way appro-
priate the funds of the corporation to their own use, but
were guilty of the grossest inattention to business, and
usurpation of powers that should have been exercised only
by the board of directors; and in the exercise of the pow-
ers thus usurped they failed to exercise that diligence, pru-
dence, and forethought which a man of ordinary prudence
and business sagacity would deem essential for the safe
conduct of the important business of such an association;
and that the losses named in said finding occurred solely by
such neglect on the part of the defendants.   These losses
are summarized under heads in ten divisions of the finding,
followed by this statement: "The foregoing findings as
to the losses sustained by the plaintiff corporation are
founded upon the testimony of plaintiff's witnesses, and
*particularly the figures made and testified to* by Mr. Somers,
who is called an expert.   No expert testimony was called
upon the other side, and *I have not undertaken, what to me
would probably be an impossible task, figuring out the matter
for myself.*"

As conclusions of law the court found the plaintiff enti-
tled to judgment against the defendants for the sum of
$21,407.05, adding thereto the following: "I base this find-
ing of law upon the fact that the defendants were grossly
negligent and inattentive to their duties in conducting the
affairs of the corporation, and that they took upon them-
selves the powers and assumed authority not given them
by the by-laws, but reserved to the board of directors, and
that such losses occurred by reason of such negligence and
usurpation of authority."   Judgment was rendered accord-
ingly, and the defendants took a large number of exceptions
to the findings, presenting the questions hereinafter con-
sidered.   After judgment, but before appeal, the plaintiff
remitted from the recovery $3,062.75, being for the losses

found to have been sustained before March, 1883, to the
amount of $2,202.74, and for the losses found to have been
sustained between March, 1887, and September 1, 1887,
amounting to $860.01, during the period when the defend-
ants were not both of them officers of plaintiff, leaving the
amount of damages at $18,344.30. Deducting from this
sum the amount of alleged overpayment of 152 shares of
first series of stock, amounting to $7,724.91, and the bal-
ance of the finding, namely, $10,619.39, is made up of items
which may be classed as follows, to wit:

(1) Fines, charges, dues, and interest not collected.

(2) Loss on issue of shares, too little being paid therefor.

(3) Loss on cancellation of shares by paying too much
for them.

(4) Loss on loans canceled, not sufficient money being
collected thereon.

These losses are found as follows:

| | |
|---|---:|
| From March, 1883, to March, 1884 . . . . . . . . . . . | $3,357 88 |
| From March, 1884, to March, 1885 . . . . . . . . . . . | 4,882 20 |
| From March, 1885, to March, 1886 . . . . . . . . . . . | 1,846 24 |
| From March, 1886, to March, 1887 . . . . . . . . . . . | 433 15 |
| Amounting to . . . . . . . . . . . . . . . | $10,519 47 |

The sum for fines, charges, dues, and interest not col-
lected consists of items as follows:

| | |
|---|---:|
| (1) From March, 1883, to March, 1884 . . . . . . . . . . | $550 55 |
| Failure to collect interest on notes during same time . . | 203 98 |
| (2) From March, 1884, to March, 1885, failure to collect dues | 688 88 |
| Failure to collect notes and bills, with interest . . . . | 555 33 |
| (3) From March, 1885, to March, 1886, failure to collect dues, etc. . . . . . . . . . . . . . . . . . . | 53 40 |
| (4) Failure to collect interest . . . . . . . . . . . | 201 50 |
| (5) From March, 1886, to March, 1887, failure to collect proper charges from shareholders . . . . . . . . . | 436 85 |

LOSSES ON SHARES ISSUED FOR TOO LITTLE MONEY.

| | |
|---|---:|
| (1) March, 1883, to March, 1884, eight shares at loss of . . | $52 96 |
| (2) March, 1884, to March, 1885, loss on thirty shares . . . | 59 10 |

The North Hudson Building and Loan Ass'n vs. Childs and another.

CANCELLATION OF SHARES FOR WHICH MORE WAS PAID THAN THEY
WERE WORTH.

(1) March, 1883, to March, 1884 . . . . . . . . . . . . $54 70
(2) March, 1884, to March, 1885 . . . . . . . . . . . . 2,713 46
(3) March, 1885, to March, 1886 . . . . . . . . . . . . 694 73
(4) March, 1886, to March, 1887 . . . . . . . . . . . . 38 00

CANCELED LOANS, NOTES, ETC., FOR TOO LITTLE MONEY PAID.

(1) March, 1883, to March, 1884 . . . . . . . . . . . . $2,624 61
(2) March, 1884, to March, 1885 . . . . . . . . . . . . 882 31
(3) March, 1885, to March, 1886 . . . . . . . . . . . . 3,213 46
(4) March, 1886, to March, 1887 . . . . . . . . . . . . 93 55

There are credits to be deducted for the total losses of
the year from March, 1885, to March, 1886, of $2,216.85 on
"account of the collections in excess of the amounts due
various stockholders and on account of the cancellation of
a part of the liability of the corporation accruing by reason
of the cancellation of the first series of stock," as stated in
the finding of the court.

These statements do not embrace losses said to have oc-
curred between March, 1887, and the following September,
amounting to $860.01.

Such other facts as are material will be found stated in
the opinion.

For the appellant *Childs* there were briefs by *Ray S.
Reid*, attorney, and *C. D. O'Brien*, of counsel, and oral
argument by *Mr. Reid.*

For the appellant *Denniston* there were briefs by *H. L.
Humphrey*, attorney, and *Baker & Helms*, of counsel, and
oral argument by *Mr. Humphrey* and *Mr. E. W. Helms.*

For the respondent there were briefs by *Bashford &
Disney* and *R. H. Start*, attorneys, and *Bashford, O'Con-
nor & Polleys*, of counsel, and the cause was argued orally
by *J. W. Bashford, R. M. Bashford*, and *R. H. Start.*
They contended, *inter alia*, that it is well settled that direct-
ors must make good losses arising from their acts in violation
of the by-laws, independent of the question of negligence

or good faith. *Citizens' B., L. & S. Asso. v. Coriell*, 34
N. J. Eq. 383; *Williams v. Rily*, 34 id. 398; *Oakland S.
Bank v. Wilcox*, 60 Cal. 126; *Austin v. Daniels*, 4 Denio,
301; *Comm. Bank v. Ten Eyck*, 48 N. Y. 305; *Van Dyck
v. McQuade*, 86 N. Y. 45; 1 Morawetz, Priv. Corp. sec.
555; Taylor, Priv. Corp. (2d ed.), sec. 616; *Williams v.
McDonald*, 42 N. J. Eq. 392; *Fifth Ward S. Bank v. First
Nat. Bank*, 47 N. J. Law, 357; Cook, Stockholders, secs.
680, 681; *First Nat. Bank v. Lucas*, 21 Neb. 280; Thomp-
son, Liab. Off. Corp. 375, sec. 16; Id. 353, sec. 2; *Percy v.
Millaudon*, 8 Mart. (La.), 68; *Thompson v. Greeley*, 107
Mo. 577. As trustees the directors are bound to observe
the limitations placed upon their power in the charter and
by-laws, and if they transcend such limitations and dam-
age ensues they are liable. *Hun v. Cary*, 82 N. Y. 65;
*Barr v. N. Y., L. E. & W. R. Co.* 52 Hun, 555; *Cook v.
Berlin W. M. Co.* 43 Wis. 433; Thomp. Liab. Off. Corp.
244, 246, 439; *Fifth Ward S. Bank v. Comm. Bank*, 48
N. J. Law, 513; *Jackson v. Ludeling*, 21 Wall. 616; *Bliss
v. Matteson*, 45 N. Y. 22; *Fulton v. Whitney*, 66 N. Y. 548;
*Wardell v. U. P. R. Co.* 103 U. S. 651. As such directors
they must exercise ordinary care and prudence in the
trust committed to them,— the same degree of care and
prudence that men prompted by self-interest generally ex-
ercise in their own affairs. *Williams v. McKay*, 40 N. J.
Eq. 195; *Hodges v. N. E. Screw Co.* 1 R. I. 312, 53 Am.
Dec. 640; *Hun v. Cary*, 82 N. Y. 65; *Charitable Corp. v.
Sutton*, in Thomp. Liab. Off. Corp. 226; *York, etc., R. Co.
v. Hudson*, id. 244; Angell & Ames Corp. sec. 314; *United
Society v. Underwood*, 9 Bush (Ky.), 617; 1 Morawetz, Priv.
Corp. (2d ed.), sec. 561; 2 Field's Lawyers' Briefs, 187;
*Ackerman v. Halsey*, 37 N. J. Eq. 361; *Trustees M. B. F. &
D. S. Bank v. Bosseiux*, 3 Fed. Rep. 817; *Austin v. Dan-
iels*, 4 Denio, 301; 2 Morawetz, Priv. Corp. (2d ed.), secs.
612, 614, 616–619, 622 and note 1, 624; *Brinckerhoff v.*

*Bostwick,* 88 N. Y. 56; Endlich, Build. Asso. secs. 188, 198–9, 202; *Comm. Bank v. Ten Eyck,* 48 N. Y. 305; *Robertson v. Homestead Asso.* 69 Am. Dec. 156, note; *Wilkinson v. Dodd,* 40 N. J. Eq. 123; *Spering's Appeal,* 71 Pa. St. 11; *Shea v. Mabry,* 1 Lea (Tenn.), 319; Ewell's Evans, Agency, 375; *Williams v. McKay,* 46 N. J. Eq. 25. The defendants are jointly liable. Taylor, Priv. Corp. (2d ed.), 626; Thomp. Liab. Off. Corp. 353, sec. 3; *Land Credit Co. v. Fermoy,* L. R. 8 Eq. Cas. 10; *Joint Stock Discount Co. v. Brown,* id. 380; *Ashhurst v. Mason,* 20 id. 225; 1 Morawetz, Priv. Corp. (2d ed.), sec. 563, note.

PINNEY, J. 1. The corporation plaintiff has a remedy against its directors and officers for negligence, fraud, breaches of trust, or for acts done in excess of their authority, and the case against each is distinct, depending upon the evidence against him, unless two or more have joined or participated in the wrongful act, in which case all participants may be joined in the suit. And where the act is illegal or in violation of some positive law, the authorities indicate that there is no right of contribution where one only is sued and charged; and therefore it is held in many cases that it is not necessary to make all the directors parties who have more or less joined in the act complained of. Thomp. Liab. Off. Corp., in notes 352, 353, 411, and cases cited. A different rule is maintained in the modern cases in England and America, in cases where the wrongful act is the result of negligence or gross misjudgment and is not, in and of itself, illegal or a violation of some positive law, as will be shown hereafter; and there exists high authority in such cases for holding that in all cases where contribution would be allowed in equity, there those who are liable to contribute are necessary parties to a suit in equity to obtain redress for the loss which the corporation has suffered. The remedy of the corporation for

the wrong done is either at law or in equity, according to
the nature of the case.  Hence, in every such case as the
present it is important to determine at the outset whether
the action shall be or is a legal or equitable one, and, if the
latter, whether the necessary parties are before the court
to enable it to make a proper and complete determination
of the controversy.  This action has been treated through-
out by the plaintiff and by the circuit court as a legal ac-
tion, both in the demand for judgment and in the course
taken at the trial, a trial by jury having been waived, and
the court ruling that no evidence of liability was compe-
tent that did not equally affect both defendants; and, after
judgment, by the remission of damages for the periods
mentioned, on the ground that for these sums the defend-
ants were not jointly liable, though this fact was either
overlooked or was not regarded in the decision of the case.

2. The complaint is not entirely definite and clear in the
allegations upon which the liability of the defendants is
rested, but groups together grounds not entirely congruous
when stated in the same cause of action, as the charge
against them is gross neglect, mismanagement, and inat-
tention of the defendants " to the duties of their said of-
fices," and they are, to some extent at least, attempted to
be charged for negligence or misconduct in their respective
offices of president and treasurer, and also as members of
the board of directors, the by-laws making them *ex officio*
such.  Some of the acts as to which negligence and mis-
conduct are predicated lie wholly outside the scope of the
duties of either one or both the president and treasurer.
In the main, the *gravamen* of the case seems to be that the
defendants have exceeded their respective powers as such
president and treasurer. in dealing with the property and
property rights of the plaintiff, and have usurped the pow-
ers of the board of directors in these respects; and it is ex-
pressly charged in the 7th, 9th, 10th, 11th, 12th, 13th, and

14th causes of action (so designated) that they did the acts complained of "without the knowledge, consent, and approval of the board of directors;" and the last of these causes of action, grouping the plaintiff's losses in one aggregate sum of $22,000, charges "that between the 1st of March, 1882, and the 1st of September, 1887, the plaintiff, through the gross neglect, mismanagement, and inattention of the defendants to the duties of their said offices, has lost in dues, interest, and charges on stocks and loans, and on loans made by defendants, and in the wrongful cancellation of stock by the defendants, and paying thereon more than the holders thereof were entitled to receive and be paid by said corporation, and *without the knowledge, consent, or authority of* the board of directors of said corporation, and without the knowledge, consent, or authority of the stockholders thereof, to the amount of $22,000." The first five causes of action (so designated) proceed entirely upon the ground of gross neglect and mismanagement of the defendants, and there are items also in the other causes of action based on that ground. The circuit court based the finding against the defendants on the ground " of gross negligence and usurpation of authority not given them by the by-laws, but reserved to the board of directors."

These different allegations thus blended in the several so-called causes of action, which are in fact but enumerations of items of liability under what is really but one general count, require different answers and different evidence to meet them, creating difficulties of procedure which can be best dealt with and overcome in an equitable action. We think that the case made by the pleadings and proofs is not one where an adequate and proper remedy by legal action can be obtained, but the action must be treated as an equitable one; and that the circuit court erred in dealing with it on any other basis. As a recovery in a *legal* action, the judgment must stand or fall on the liability of the de-

The North Hudson Building and Loan Ass'n vs. Childs and another.

fendants as president and treasurer, for no recovery can be had at law against a minority of the board of directors for misconduct or negligence, inasmuch as they can act only when lawfully assembled, and their duties as such are devolved on them as a board and not individually. *Franklin Ins. Co. v. Jenkins*, 3 Wend. 134; *Gaffney v. Colvill*, 6 Hill, 572, 573.

3. Much argument was had upon the rule of liability of corporate officers in cases such as this, presenting for consideration some questions in respect to which a considerable difference of opinion has prevailed. The liability of officers to the corporation for damages caused by negligent or unauthorized acts rests upon the common-law rule which renders every agent liable who violates his authority or neglects his duty to the damage of his principal. It seems to be now universally agreed that, no matter whether the act is prohibited by the charter or by-laws, the liability is on the ground of violation of authority or neglect of duty. Thomp. Liab. Off. Corp. 357; *Briggs v. Spaulding*, 141 U. S. 146.

There can be no doubt that if the directors or officers of a company do acts clearly beyond their power, whereby loss ensues to the company, or dispose of its property or pay away its money without authority, they will be required to make good the loss out of their private estates. Thomp. Liab. Off. Corp. 375; *Joint Stock Discount Co. v. Brown*, L. R. 8 Eq. 381; *Flitcroft's Case*, L. R. 21 Ch. Div. 519; *Franklin Ins. Co. v. Jenkins*, 3 Wend. 130; and many other authorities to this effect were cited by the respondent's counsel. This is the rule where the disposition made of money or property of the corporation is one either not within the lawful power of the corporation, or, if within the power of the corporation, is not within the power or authority of the particular officer or officers. Where the ground of liability is for nonfeasance, negligence, or mis-

judgment in respect to matters within the scope of the proper powers of the officer, he will be held responsible only for a failure to bring to the discharge of his duties such degree of attention, care, skill, and judgment as are ordinarily used and practiced in the discharge of such duties or employments; the degree of care, skill, and judgment depending upon the subject to which it is to be applied, the particular circumstances of the case, and the usages of business.

In respect to directors or those acting *ex officio* as such, the rule of liability has been the subject of much discussion in the recent case of *Briggs v. Spaulding*, 141 U. S. 132, in which, although there was a strong dissent, the rule may be regarded as settled, in the federal courts at least and in the courts of several of the states, as there laid down, and to the effect that directors, although often called "trustees," are not such in any technical sense, but that they are mandataries, the relation between them and the corporation being rather that of principal and agent, but under circumstances they may be treated as occupying, in consequence of the powers conferred on them, the position of trustees to *cestuis que trustent;* that the degree of care required of them depends upon the subject to which it is to be applied, and each case is to be determined upon its own circumstances; that, as they render their services gratuitously, they are not to be held to the degree of responsibility of bailees for hire, or expected to devote their whole time and attention to their duties; that they are not, in the absence of any element of positive misfeasance, and solely on the ground of passive negligence, to be held liable, unless their negligence is gross or they are fairly subject to the imputation of a want of good faith. It is to be remembered that they have the same interests to protect and subserve as other stockholders, and self-interest naturally prompts them to look after their own, and the degree of

care they are bound to exercise is that which ordinarily prudent and diligent men would exercise under similar circumstances in respect to a like gratuitous employment, regard being had to the usages of business and the circumstances of each particular case; that they are not liable, in the absence of fraud or intentional breach of trust, for negligence, mistakes of judgment, and bad management in making investments on doubtful or insufficient security. Where they have not profited personally by their bad management, or appropriated any of the property of the corporation to their own use, courts of equity treat them with indulgence. Were a more rigid rule to be applied, it would be difficult to get men of character and pecuniary responsibility to fill such positions. Thomp. Liab. Off. Corp. 357; Beach, Corp. § 249. These views are sustained in *Briggs v. Spaulding,* 141 U. S. 130; *Spering's Appeal,* 71 Pa. St. 11; *Citizens' B., L. & S. Asso. v. Coriell,* 34 N. J. Eq. 383, 392; *Swentzel v. Penn Bank* (Pa. Sup.), 23 Atl. Rep. 413; *In re Forest of Dean Coal Min. Co.* L. R. 10 Ch. Div. 450; *Ackerman v. Halsey,* 37 N. J. Eq. 363; *Hun v. Cary,* 82 N. Y. 65; *In re Denham & Co.* L. R. 25 Ch. Div. 752; *Watt's Appeal,* 78 Pa. St. 391. These views are applicable, we think, to the case of all officers serving and acting within the scope of their authority gratuitously or practically so. The rule of liability in case of service for reward is well understood, and need not be repeated.

It has been thought best to indicate the rules we think applicable to the liability of directors and other officers of corporations, as these questions were fully discussed at the argument, and in view of the probable importance of these questions in the future disposition of this cause.

The finding of the circuit court that no directors' meetings were held within the period mentioned, and that the business of the corporation, consisting of issuing stock, making loans, accepting prepayment of loans, and in fact all

the business of the corporation, was transacted without any direction of the board of directors by the defendants and Harvey, the secretary, since deceased, is, we think, sustained by the evidence, although stoutly denied by the defendants. There is not only no record of any such meetings, but those who are said to have been directors during the period all deny attending any such meetings or transacting any such business, and the defendants themselves are wholly unable to name a single director who was present at any such meeting. While the absence of a record of proceedings, due to the negligence of the secretary, would not defeat the action of the directors, we are satisfied no such meetings were held; and that the alleged want of authority in respect to many matters transacted by the defendants, or one of them, and Harvey was not supplied at any of the stockholders' meetings, and unless ratified subsequently they were without requisite authority. During a period of about five years the regularly chosen directors of the corporation wholly abdicated their functions as such, and gave no attention whatever to their duties, and left everything connected with the affairs of the corporation to the management of the president, secretary and treasurer, by virtue of their several offices, and, beyond this, to take their own unheeded course. At the annual meetings of stockholders, officers and directors were regularly elected, and reports were made by the secretary and treasurer, but the directors elected utterly neglected their duties as before. The death of Harvey caused investigation, when the entire absence of proper entries on the ledger and record during all this period was discovered, as well as the fact that there was a shortage in the funds of the corporation. The defendants during all this time had proceeded to discharge the duties of their respective offices, and looked after and conducted the affairs of the corporation in connection with Harvey, the secretary, in entire good faith,

not deriving any improper personal gain or profit, and without improperly appropriating to themselves any of its property or funds. They may have made mistakes and misjudged as to their powers and duties. They were not guilty of intentional wrong. The defendant *Denniston*, the treasurer, whose functions were purely ministerial and extended only to receiving the moneys of the plaintiff and paying them out, and to the safe-keeping of its securities and keeping a correct account, has accounted for and paid over every cent he received, and yet he was charged by the circuit court with losses of the corporation by the judgment in this case to the amount of over $21,000.

We are unable to see how the defendants are to be thus charged as *ex officio* members of the board. They were not technically directors, and neither of them had it in his power to call a meeting of the board. They could act as *ex officio* members only at a meeting regularly convened, and no meetings were held. Directors cannot act in any other manner. Cook, Stock, § 592, and cases in note. This is so well settled that citation of authority would be superfluous. Stated monthly meetings of the board were required to be held on the next Tuesday after the monthly stockholders' meetings, but the directors came not. Special meetings might be called on the written request of two *directors*, but no such request appears to have been made, and none are willing to own, now that misfortune has overtaken the company, that he ever acted as a director during the period in question. All have been eager to take the benefits, whatever they were, of the management of the defendants, and accept their share of the money disbursed in paying off the first series of stock at a figure amounting to nearly $8,000 more than was due on it, as it is now claimed. None but the president, treasurer, and secretary appear to have been willing to give the affairs of the corporation any particular attention. And at least five of the

directors are understood to have received, and still hold, their shares of this amount, and now all appear to be demanding that these defendants shall put back that amount of money from their own funds into the treasury of the plaintiff to make good the alleged loss on this and other accounts, arising out of their attempt to manage the affairs of the plaintiff without the aid or authority of the board of directors. Such a claim, when well founded in law, ought to be established by entirely satisfactory evidence.

Regarding the case now presented by the record as one where a recovery must depend upon the liability of the defendants disconnected with their *ex officio* membership of the board, it is plain that *Childs* and *Denniston*, in their respective capacities as president and treasurer, are not responsible for the nonfeasance, negligence, or misfeasance of Harvey as secretary; nor is either of these liable for the nonfeasance, negligence, or misfeasance of the other in his official relations to the plaintiff. Their liability is several and separate. They cannot be held jointly liable for any act in excess of the authority of either or both of them, without proof of joint participation, to be proved in each instance and not presumed; and here we have neither finding nor proof of improper combination or intentional wrong. If *Childs* and Harvey, as president and secretary, exceeded their powers in any given instance to the loss or damage of the plaintiff, *Denniston* is not chargeable with it, without proof that he intermeddled with it and in excess of his authority. If *Denniston* and Harvey, as treasurer and secretary, exceeded their powers in any case to the loss or damage of the plaintiff, *Childs* is not liable without proof that he intermeddled or participated in the wrong.

While these rules are obviously correct, and so clearly so that citation of authority is not needed to vindicate them, in view of the finding and the evidence upon which it was based we have felt it proper to state them at length and

with some particularity, as bearing upon the correctness of the judgment of the circuit court.

4. It is contended by the respondent that as no motion for a new trial was made before judgment the question whether the finding is contrary to evidence is not open to review. As the trial was by the court without a jury, no such motion was necessary. Where there are exceptions to the finding, this court must review the case on the facts. *Garbutt v. Bank of Prairie du Chien*, 22 Wis. 377.

5. The extent of loss or damages the plaintiff had sustained formed a very important part of the controversy, and upon this branch of the case we regret to say that we are without the assistance and benefit of an examination and determination of the circuit court. As early as September, 1887, the plaintiff employed a Mr. Somers, of St. Paul, as an expert accountant, who had had considerable experience in the management of the affairs of building associations, to examine the books and papers of the plaintiff, ascertain its financial condition, the extent of its losses, and how they had been occasioned. His examination extended from February, 1882, to September, 1887. He made a report upon these matters, which was put in evidence on the trial, or the substance of it, and this report, with a set of books compiled by him, and his testimony, constitute almost the entire basis on which the finding against the defendants for $21,407.05 rests. This report was adopted as an entirety by the circuit court, and the question of the extent of loss or damages, as well as legal questions in respect to liability, were, in effect, determined by the hired expert of the plaintiff instead of the court; and we have been urged to accept it here in like manner as final and conclusive. If we were willing to do so, and should accordingly affirm this judgment, it would transpire that the plaintiff's expert had practically decided this important cause in both courts on several vital and important ques-

tions of law as well as fact. We cannot suppose that the circuit court, if it had examined the report, would have rendered the judgment found in the record.

It was not the duty of the defendant *Denniston*, as treasurer, to collect the first five items in the foregoing statement, amounting to nearly $3,000; nor was it the duty of *Childs*, as president, so far as we are able to understand it. The treasurer is only "to receive all moneys as soon as paid into the association." The secretary has custody of the accounts, books, and papers of the corporation, except deeds, bonds, mortgages, etc., kept by the treasurer, and is, it would seem, the executive manager of the financial business of the corporation. The testimony to show that any loss had been actually sustained while these defendants were in office is too vague and uncertain to justify the rendition of a judgment for these amounts. Mere proof of failure to collect these items is far from showing that they were lost. Besides, as to many of them, their collection might have been enforced by forfeiture and sale of the stock. These defendants did not possess that power. It was lodged with the board of directors, and in some instances at least the security for loans is security for fines, dues, and interest. The collection of these items was a part of the business of the corporation in charge of its board of directors, and they might devolve it on the secretary if it was not one of the duties of his office, as we understand it was. It is quite as consistent with the evidence that these losses, if such there were, occurred after the defendants resigned as before.

There is nothing in the by-laws nor in the evidence to show that it was the duty of the treasurer to do anything in relation to issuing stock beyond caring for the money paid for it after it was "paid into the association." His duties were purely ministerial, and he had nothing to do, as treasurer, with determining or computing the amount

to be paid on the issue of stock, nor is there any testimony showing or tending to show that he ever assumed to interfere with any such matter. It was error, therefore, to include in a judgment against him the sum of $112.06 for losses on shares issued for too little money. Nor is there, so far as we can discover, any proof tending to show that this loss was the fault of the president, whose duty it is to sign stock certificates.

There is embraced in the judgment items to the amount of about $6,800 for losses by cancellation of loans, on the ground that there was not money enough paid on them to satisfy them. These items appear from Mr. Somers' testimony to have been arrived at by ascertaining the amount of securities canceled each year during the period in question, and by deducting therefrom the amount that " appears to have been paid on that account *as per secretary's report,*" and the difference is charged up as a loss for which the defendants are held liable. The secretary's report is not competent evidence against these defendants to charge them with this supposed loss. It is not evidence that no more was paid to him than he reported. Which of these defendants, if either, attended to the matter of settling up the loans upon which the alleged losses occurred, we are unable to ascertain from the evidence; and if in some cases *Denniston* did, and in others *Childs,* we have no *data* upon which to ascertain the amount for which either ought to be charged. An exhibit annexed to the bill of exceptions would seem to show that in some instances releases of mortgage loans were executed and acknowledged by *Childs* as president, and in some cases by *Denniston* as treasurer, but in all cases by Harvey as secretary. If loss occurred as charged, the evidence is not sufficient to show it, much less to show what sum should be charged to *Childs,* and what to *Denniston.* It seems to have been assumed throughout that if either *Childs,* Harvey, or *Denniston* exceeded his

authority as an officer, and loss ensued, the other two would necessarily be liable for it by reason of the assumption by the one of authority lodged only in the board of directors. Each of these parties, in the absence of participation of one or both the others, would alone be liable for exceeding his authority.

The testimony as to items amounting to $3,500 or thereabouts for losses by reason of money having been paid for cancellation of stock in excess of its value seems to rest upon some method of ascertaining its supposed value adopted by Somers, which we do not fully understand; and the same is true as to cancellation of loans. He seems to have adopted some rule differing from the by-law of the company on that subject. He testified that the different parts of the rule, which is quite obscure, "don't hang together." But in view of the result at which we have arrived, it is not necessary to carefully examine this matter.

6. Stock was issued by the corporation in five series: First series, March 28, 1877, 500 shares; second series, March, 1879, 172 shares; third series, March, 1880, 76 shares; fourth series, March, 1883, 116 shares; and fifth series, February, 1886, 125 shares. It was generally supposed that the first series had matured so as to be payable at twice its nominal value in September, 1885; and the officers *Childs, Denniston,* and Harvey proceeded to make quite a large loan of the First National Bank of Hudson to raise money to pay off that series accordingly, and pledged to the bank a large amount of the plaintiff's securities; the defendant *Denniston* indorsing the note given for the loan. There was a general understanding that the first series was to be paid off, and the stockholders were anxious and ready to receive their money. Payments were accordingly made by the treasurer on orders drawn by Harvey as secretary, and signed by *Childs*, from time to time, until Harvey's death in March, 1887, no one making

any objection or supposing, so far as the evidence shows,
that there was any apprehension of any shortage in the
funds of the corporation, or any irregularity in the man-
agement of its affairs. The defendants up to this time
supposed Harvey had kept the books and records properly.
Investigation ensued, and suit was brought against the bank
by the plaintiff to recover its securities pledged for the
loan. In the mean time a board of directors and other
officers had been chosen, and the corporation had been re-
habilitated and restored to its normal action, and payments
had been ordered to be made, and were in fact paid, on
this loan. The plaintiff was unsuccessful in its suit against
the bank, and it finally paid the loan. The new board had
voted to pay six per cent. interest in May, 1887, on all un-
paid claims under the first series of stock, and directed the
issue of orders to pay some of the claimants under this
series, on the basis that it had matured in September, 1885,
and as late as January 11, 1888, two orders were directed to
be issued for the payment of some shares on the same basis.
The question had been mooted in the previous summer and
fall whether the first series had matured, and whether the
shortage in the funds was not caused by paying off that
series at much more than its actual value. The result was
that as early, probably, as September, 1887, and soon as
Somers had made his report, the plaintiff set up the claim
that at the time the first series of stock was paid off it was
in fact worth only $1.49, instead of $2, as had been sup-
posed, basing the claim on such report. The item included
in the judgment on this account is a large one, and is sus-
tained only by the report or opinion of Mr. Somers, and
the argument made upon the *data* furnished by his report
and the evidence tends strongly to show that the stock was
worth much more than the estimate made by him. The
accuracy and justice of his report as a basis of judicial ac-
tion against these defendants have been found so seriously
at fault, and as it was not made the subject of judicial

The North Hudson Building and Loan Ass'n vs. Childs and another.

examination and consideration in the circuit court, as it ought to have been, we cannot accept and act on his conclusions in respect to the claim that the first series of stock was worth only $1.49 when paid off. It is not within our province or duty to enter upon this inquiry until it has been examined and passed on by the circuit court.

We think that inasmuch as the action was treated as a legal, and not an equitable, one, by the circuit court, and as the correctness of the report or statement of the expert, Somers, was not judicially investigated and passed on, there was practically a mistrial of the action, and that the judgment should be reversed on that ground, if for no other reason. "A trial is the judicial examination of the issues between the parties." R. S. sec. 2842. We have bestowed an unusual amount of care and labor upon this important case, and have been desirous, if possible, to arrive at some conclusion upon which we might direct such judgment to be entered as we might feel confident would do substantial justice to the parties, and avoid the delay and cost of further litigation, but we have been unable to do so with the material before us.

The functions of this court, with few exceptions, are appellate only. We cannot permit the burden of the duty of trial courts to examine and pass upon cases before them to be cast upon us in the first instance, without proper opportunity for such examination, burdened as we are with a constantly increasing number of appeals. We cannot stop, if we were disposed to do so, to enter into elaborate computations and comparisons, and examine critically voluminous bills of exceptions, with numerous manuscript exhibits, sometimes supplemented with a box filled with books and papers. All this great bulk of matter should be reduced to reasonable compass, and arranged in proper order, before being brought to this court.

As the judgment of the circuit court must be reversed for the errors already noticed, we think it is but justice to

The North Hudson Building and Loan Ass'n vs. Childs and another.

both parties to order a new trial, and to direct that the cause be referred upon all the issues therein, upon the proofs already taken and such as may be produced hereafter, to some attorney being a competent accountant, to report special findings upon all the issues, and to take and state an account of the transactions in question, and report the same to the court, to the end that such judgment may be rendered thereon as shall be just and proper. The action must be regarded as an equitable one, and other necessary or proper parties may be brought in, if it is deemed necessary by the plaintiff or by the court, in order to secure a just and proper determination of the entire controversy.

If it shall be thought proper to amend the pleadings so as to charge these defendants in equity as *ex officio* members of the board of directors, it may be that all the directors during the period in question will be necessary parties (*Sherman v. Parish*, 53 N. Y. 483), on the ground that the defendants, if chargeable as such, are entitled to have contribution of and from such directors (*Nickerson v. Wheeler*, 118 Mass. 295; *Baynard v. Woolley*, 20 Beav. 584; *Ashhurst v. Mason*, L. R. 20 Eq. 225, 236). There are authorities which take a contrary view, and as these questions thus suggested were not argued at the hearing we do not express any opinion in respect to them.

The question whether the corporation plaintiff has not so far taken and enjoyed the benefits of the transactions complained of, and ratified them, that it has lost the right to complain of them, was ably and vigorously pressed upon our attention, but we express no opinion on this point, as additional evidence may be produced materially affecting the rights of the parties in respect to it.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial and for further proceedings in accordance with the opinion of this court.