WOLF, Respondent, vs. GEGENSEITIGE UNTERSTUETZUNGS GESELLSCHAFT GERMANIA and others, Appellants.

*April 24—May 14, 1912.*

*Mutual benefit societies: Constitution and by-laws: How far contractual: Amendment: Assessment fund: Wrongful diversion of revenues: Injunction: Amotion of officers: Irregularity: Reinstatement: Repayment of expenses of litigation: Equity: Costs: Discretion: Appeal: Review.*

1. The "constitution and by-laws" of a mutual benefit society provided that all moneys received from assessments, except three per cent. thereof, should be placed to the credit of a fund established for the payment of benefit certificates and known as the assessment fund, and that the laws in regard to such fund should not be amended except in the manner therein provided. Provision was also made for the collection of additional revenues, to be placed in a general fund, to defray necessary expenses for management, benefits, or agitation. *Held*, that the provision in respect to the assessment fund was contractual and could be modified only by amendment in the manner prescribed, or by mutual consent.

2. The society engaged an organizer, under a contract by which he was to receive as part of his commission seventy-five per cent. of the first twelve assessments of each new member he obtained, and at several successive meetings of the general council a resolution was adopted providing that said seventy-five per cent. of the first twelve assessments should be carried into and credited to an agitation fund; but no amendment of the constitution and by-laws was otherwise attempted. This diversion of moneys from the assessment fund was acquiesced in for several years, but suit for an injunction was finally brought by members of the society. *Held*, that relief against future diversion of the fund was properly granted.

3. Every corporation has at common law, as incident to its existence, the power of amotion. Generally this power is to be exercised only for cause and after notice and hearing, but the statute, or the articles where the statute does not forbid, may provide otherwise.

4. Where officers of a mutual benefit society, acting in good faith for what they deemed to be the best interests of the society,

and under the advice of counsel, attempted to remove certain subordinate officers, but in so doing proceeded irregularly, without notice or hearing, they should not be required to repay to the society moneys expended by them out of the corporate funds for attorneys' fees and other necessary expenses in unsuccessfully defending an action by the officers so removed to compel reinstatement.

5. In an action against a corporation and its officers to enjoin a wrongful diversion of corporate funds and to recover moneys improperly paid out, judgment having gone in favor of the plaintiffs and the trial court in its discretion having awarded costs against such officers individually, the supreme court on appeal declines to review such discretion.

APPEAL from a judgment of the circuit court for Milwaukee county: GEO. W. BURNELL, Judge. *Modified and affirmed.*

The appellant *Gesellschaft* is a Wisconsin corporation organized under ch. 86, Stats. (1898), as a mutual benefit society furnishing life and sick benefit insurance on an assessment plan to its members. It is formed without capital stock and for benevolent and charitable purposes, and, except such benefit insurance, no dividend or other pecuniary profits can be paid to members. The articles contain provisions for removal of members guilty of immoral conduct, neglecting or failing to support their families, violating the constitution or by-laws, or guilty of acts or conduct calculated or tending to create discord among the members of the society. The society consists of a grand council or central verein and subordinate councils, and the charter members of the society, the officers thereof, and the representatives selected by subordinate councils for that purpose are members of the grand council or central verein. In addition to these articles of organization the society has what it calls "Constitution and By-laws," and this instrument restates and amplifies the purpose and powers of the organization and contains numerous rules and regulations. Among these to collect an income from members as follows: For charters and supplies to a new branch, $100;

death benefit certificates, each $1; a per capita tax of $1 per
member per annum; and small fees for withdrawal cards, trav-
eling cards, etc.   This is followed by a provision that the cen-
tral society may levy and collect additional revenues to defray
the necessary expenses for management, benefits, or agitation.
There is a death benefit or assessment fund to be paid monthly
by the members, classified according to age and amount of
benefit certificate.   These appear to cover the resources of the
organization.   There is authority to establish and maintain a
fund for the benefit of sick members of the society, to be
known as the "General Sick Fund," and thirty per cent. of
the per capita tax is to be credited to this fund semi-annually.
Also to establish and maintain a fund for the payment of cur-
rent and other expenditures of the association, to be known as
the "General Fund," and this fund is to be credited with all
the income of the society, such as receipts for charters, goods,
certificates, seventy per cent. of the per capita tax, and three
per cent. of the receipts for assessments.   Also to establish
and maintain a fund for the payment of the benefit certifi-
cates, to be known as the "Assessment Fund," and all re-
ceipts for assessments are to be placed to the credit of this
fund with the exception of the three per cent. above men-
tioned.   This fund seems to be identical with what is some-
times called the mortuary fund of such associations.   The as-
sociation is authorized to establish and maintain a reserve fund,
which is to consist of payments for the reserve fund made by
members, but three per cent. of these payments may be cred-
ited monthly to the general fund.   There is also this provi-
sion: "This Central Society may levy and collect additional
revenues to defray the necessary expenditures for manage-
ment, benefits, or agitation.   All such revenues shall be placed
in the General Fund."   It is also provided that "the laws in
regard to the assessment, reserve, sick benefit, and general
funds shall not be amended, except by two thirds of the mem-
bers of the Central Society present in an annual meeting or

in a special meeting of the Central Society called for that purpose; and all amendments proposed must be submitted in writing and communicated to all branch societies."

In the year 1905, at the annual meeting of the general council of the central society, there was a resolution adopted creating a new fund, to be known as the "Agitation Fund and the Holdman Fund." This was done because it was found necessary to get in new members, and a solicitor or organizer named Holdman was engaged for that purpose by contract with the society. By this contract Holdman was to obtain new members for the society, and the latter was to pay him as part of his commission seventy-five per centum of the first twelve assessments of each new member which he obtained. This resolution was re-adopted or approved at each annual meeting thereafter for several years, but no amendment of the constitution and by-laws was otherwise attempted. By the resolution this seventy-five per cent. of the first twelve assessments was to be carried into and credited to the agitation fund.

The circuit court, while not denying the power of the society to levy and collect additional revenues to defray the necessary expenditures for management, benefits, or agitation, held that under the foregoing by-laws or constitution this so-called agitation fund could not be created out of the moneys received for assessments, nor could the latter moneys, except three per cent. thereof, be diverted from the "Assessment Fund." But as this had been done from 1905 to 1910 and acquiesced in by the corporation properly represented at its regular meetings and by members there properly represented, all such past transactions would not be disturbed, but an injunction should go against any future or further diversions of these assessments for such purpose.

2. It appeared that certain officers of the corporation appellant had attempted to remove Weingart and Korn, who were members and subordinate officers of said society, on the ground that they had conducted themselves in an unworthy

manner, but failed to proceed regularly upon notice to Wein-
gart and Korn.    The latter applied to the court for reinstate-
ment by *mandamus*.    They were reinstated, and the case is
reported under the title of *State ex rel. Weingart v. Board, etc.*
144 Wis. 516, 129 N. W. 630, where the reinstatement was
confirmed in this court upon appeal.    The circuit court found
that on or about March 17, 1909, without notice or hearing
or cause, the defendant officers of the corporation appellant
wrongfully and unlawfully suspended and removed Weingart
and Korn from their offices as "guide" and "guard" of said
corporation and that they were reinstated by the court.    The
defendant's officers used and expended the corporate funds for
the payment of attorney fees and expenses in said *mandamus*
action to the amount of $1,957.79, in spite of written protests
by several of the subordinate societies of the corporation.
This sum defendant's officers were required to pay back into
the treasury.    Costs were awarded against the defendant's
officers personally.    Other claims of the plaintiff were disal-
lowed.    The defendants appealed from the judgment, and
there are three questions only before this court for considera-
tion: (1) Is the decree proper in so far as it enjoins further
diversions of the assessments to the general or agitation fund?
(2) Ought the defendant officers be required to pay back into
the corporate treasury the fees and expenses disbursed by them
in the *mandamus* action mentioned?    (3) Were costs properly
awarded against appellants?

   *Louis G. Bohmrich,* for the appellants, contended, *inter
alia,* that a by-law could be set aside without formal repeal.
3 Clark & Marshall, Priv. Corp. 1951, 1955; *Myer v. Poe,* 79
Ark. 465, 95 S. W. 1005; *Att'y Gen. v. Middleton,* 2 Ves. Sr.
327; *Union Bank v. Ridgely,* 1 Har. & G. 324; *People ex rel.
Muir v. Throop,* 12 Wend. 183; *Germania I. M. Co. v. King,*
94 Wis. 439, 69 N. W. 181; *Buck v. Troy A. Co.* 76 Vt. 75,
56 Atl. 285; *Stafford v. Produce E. B. Co.* 16 Ohio C. C. 50;
*Marsh v. Mathias,* 19 Utah, 350, 56 Pac. 1074; *Henry v.
Jackson,* 37 Vt. 431; *Blair v. Metropolitan Sav. Bank,* 27

Wash. 192, 67 Pac. 609.    As to the liability of defendants to
refund corporate funds expended in good faith in litigation,
they cited *Kanneberg v. Evangelical C. Cong.* 146 Wis. 610,
131 N. W. 353; *North Hudson Mut. B. & L. Asso. v. Childs,*
82 Wis. 460, 52 N. W. 600; *McElroy v. Minnesota P. H. Co.*
96 Wis. 317, 71 N. W. 652; *Interior W. Co. v. Prasser,* 108
Wis. 557, 84 N. W. 833; *Pixley v. W. P. R. Co.* 33 Cal. 183;
*National Bank v. Earl,* 2 Okl. 617, 39 Pac. 391; *Hodges v.
New England S. Co.* 1 R. I. 312; *Spering's Appeal,* 71 Pa.
St. 11; *State Journal P. Co. v. Madison,* 148 Wis. 396, 134
N. W. 909; *Brown v. DeYoung,* 167 Ill. 549, 47 N. E. 863.

For the respondents there was a brief by *Quarles, Spence &
Quarles* and *Walter H. Bender,* attorneys, and *J. V. Quarles*
and *W. H. Bender,* of counsel, and oral argument by *J. V.
Quarles* and *W. H. Bender.*    They cited, among other cases,
*Johnson v. Mutual G. B. & L. Asso.* 66 N. J. Law, 683, 51
Atl. 150; *Mutual A. & I. Soc. v. Monti,* 59 N. J. Law, 341,
36 Atl. 666; *Nat. Grand Lodge v. Watkins,* 175 Pa. St. 241,
34 Atl. 602; *Thibert v. Supreme Lodge,* 78 Minn. 448, 81
N. W. 220; *Metropolitan S. F. A. Asso. v. Windover,* 137 Ill.
417, 27 N. E. 538; *Van Atten v. Modern B. of Am.* 131 Iowa,
232, 108 N. W. 313; 1 Thomp. Corp. (2d ed.) § 1016; *Hoch-
reiter's Appeal,* 93 Pa. St. 479, 484, 485; *Bagley v. Reno Oil
Co.* 201 Pa. St. 78, 81, 50 Atl. 760, 56 L. R. A. 184; *National
Council v. State Council,* 27 App. Cas. (D. C.) 1, 12, 18;
*Deuble v. Grand Lodge,* 66 App. Div. 323, 72 N. Y. Supp.
755; *S. C.* 172 N. Y. 665, 65 N. E. 11, 16; *Torrey v. Baker,*
1 Allen, 120; *Flaherty v. Portland L. B. Soc.* 99 Me. 253, 59
Atl. 58; *Baltimore & O. R. Co. v. Baltimore & O. E. R. Asso.*
77 Md. 566, 26 Atl. 1045; *McConnell v. Combination M. &
M. Co.* 31 Mont. 563, 79 Pac. 248; *Davis v. Memphis City R.
Co.* 22 Fed. 883; *Harbison v. First P. Soc.* 46 Conn. 529.

TIMLIN, J.    Had the corporation proceeded to amend its
"Constitution and By-laws" in the manner there provided for
amending the same, so as to repeal existing regulations and

create in their stead new rules and by-laws providing for the payment of a percentage of the first twelve assessments to be paid by a new member as a commission for obtaining that member, such action might be within the corporate power and not violative of the corporate contracts with its members, because the assessments on such new members would necessarily have to be loaded so as to include this cost, unless they were much too high in the first place. But under the circumstances appearing in this case, with the "Constitution and By-laws" forming a compact between the corporation and its members, to be modified, if at all, only in the mode and to the extent and by the authority there agreed upon, the corporation could not disregard its obligations to preserve the "Assessment Fund," less three per cent., for the purpose for which it was collected. There was another mode provided for raising the money necessary to pay the expense of obtaining new members and this mode should have been followed. The action of the grand council or central verein was by resolution, and did not purport, as we understand it, to establish a permanent *modus*, but left the "Constitution and By-laws" in force and attempted to legalize and approve their disregard. · The only question before us is upon the prospective effect of such action of the grand council. We are satisfied that it does not authorize future and further disregard of the constitution and by-laws. Such corporation has the power to amend or repeal its by-laws and in many cases to suspend their operation in an emergency. The law treats this subject with liberality. But this power of amendment, repeal, or suspension cannot be carried so far as to authorize a breach of contract by the corporation. To attempt the suspension or repeal of a by-law in some forbidden way might be a breach of contract, even though the power of repeal might have been otherwise lawfully exercised. The by-law here disregarded was contractual. The *Gesellschaft* in effect said to its members: all sums derived from assessments except three per cent. shall be held in a fund and

not otherwise disbursed than for the payment of benefit cer-
tificates, and this condition shall continue until changed by
amendment in the manner provided for amending the by-laws.
To this the holders of the benefit certificates assented when
they became members. Thereby not only a by-law but also a
contract was created, which could be modified only by pro-
ceeding to modify it in the manner there stipulated or by sub-
sequent mutual consent. The proceedings of the central
verein were not in the nature of an amendment or attempt to
amend the by-law, but rather a suspension thereof for the
time being. We think the relief granted by the learned cir-
cuit judge against future diversion of this fund in such man-
ner and under such authority was well within the law and must
be upheld. *Flaherty v. Portland L. B. Soc.* 99 Me. 253, 59
Atl. 58; *Baltimore & O. R. Co. v. Baltimore & O. E. R.
Asso.* 77 Md. 566, 26 Atl. 1045; *Mutual Aid & I. Soc. v.
Monti,* 59 N. J. Law, 341, 342, 36 Atl. 666; *Bagley v. Reno
Oil Co.* 201 Pa. St. 78, 50 Atl. 760, 56 L. R. A. 184; *Thibert
v. Supreme Lodge,* 78 Minn. 448, 81 N. W. 220, 47 L. R. A.
136.

2. Upon the second point made by appellants, the learned
circuit court, in its opinion disposing of the case, stated that
were the question an open one he might be disposed to accept
the views of appellants' counsel with reference to the right of
defendants to reimburse themselves out of corporate funds in
their hands for their expenses incurred by them in unsuccess-
fully defending a *mandamus* action for reinstatement by two
officers removed by defendants. But he considered that the
decision of this court in *State ex rel. Weingart v. Board,* 144
Wis. 516, rather bound him to the contrary conclusion. In
this we think he was in error. To the case last cited the cor-
poration was not a party and costs could not have been ad-
judged against it. The decision as to costs in that case had
relation to the issues presented by that case and the parties
there before the court. The attempted removal was arbitrary,

in that it was made without notice of the charges and oppor-
tunity for hearing and defense. But this does not necessarily
imply bad faith toward the corporation in making the removal
or in defending the cause. It does not even necessarily imply
bad faith toward the persons removed. There was a funda-
mental error of procedure, and for this in that case the re-
lators were reinstated. Every corporation has at common
law, as incident to its existence, the power of amotion. 2 Kent,
Comm. 298; *Neall v. Hill,* 16 Cal. 145, 76 Am. Dec. 508.
Generally this power can be exercised only for cause and after
notice and hearing, but the statute, or the articles where the
statute does not forbid, may provide otherwise. *O'Dowd v.
Boston,* 149 Mass. 443, 21 N. E. 949 ; *People ex rel. Gere v.
Whitlock,* 92 N. Y. 191. But grants of such power are strictly
construed. *State ex rel. Graham v. Chamber of Commerce,*
20 Wis. 63. The appellants, in the matter of such attempted
removal, acted upon advice of an attorney at law. They ap-
parently believed such removal to be in the interest of the cor-
poration. The corporation, if it did not ratify the disburse-
ment, recognized the good faith of the officers attempting to
make the removal by offering the aid of the association to raise
the money to cover such disbursements. We refer to the reso-
lutions of August 13, 1910. We think the case in this respect
is ruled by *North Hudson Mut. B. & L. Asso. v. Childs,* 82
Wis. 460, 52 N. W. 600. See, also, *Spering's Appeal,* 71 Pa.
St. 11; *Hodges v. New England S. Co.* 1 R. I. 312, 53 Am.
Dec. 624.

3. The costs of this suit in equity might, in the discretion
of the circuit court, have been awarded against the corpora-
tion solely or against the other defendants, or both, or denied
to the plaintiffs. The learned circuit court, in the exercise of
such discretion, awarded costs in favor of the plaintiffs and
against the defendants, who were officers of the corporation.
We perceive no ground for reviewing such discretion.

No other questions, we think, merit attention.

*By the Court.*—The judgment of the court below is modified by eliminating therefrom all provisions authorizing the recovery from the defendant's officers of $1,957.79 with interest, and as so modified affirmed; the appellants to recover costs in this court.