DELAWARE VALLEY EQUIPMENT
COMPANY, INC.

v.

John J. GRANAHAN t/a Advance
Masonry Company.

Civ. A. No. 74–1896.

United States District Court,
E. D. Pennsylvania.

March 31, 1976.

Donald B. McCoy, Langhorne, Pa., for
plaintiff.

Frederick W. McBrien, III, Norristown, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

BRODERICK, District Judge.

This is a contract action for the recovery of $28,832.00 with interest from April 1, 1974, for the sale by the plaintiff of a Lull Diesel High Lift 400–34 to the defendant on the above date. This action was tried without a jury and after carefully considering the evidence and arguments presented by both sides, the Court has determined that it will grant the relief requested by the plaintiff.

Plaintiff, Delaware Valley Equipment Co., Inc., a franchisee of Lull construction equipment, is a corporation incorporated under the law of New Jersey and maintains its principal place of business in that state. The defendant, John J. Granahan, trading as Advance Masonry Company, is a citizen of Pennsylvania maintaining his principal place of business therein. The amount in controversy exceeds $10,000.00. Therefore, diversity jurisdiction exists under 28 U.S.C. § 1332.[1]

The essential and operative facts as this Court finds them from the record are as follows: Defendant, John J. Granahan ("Mr. Granahan"), contacted plaintiff by telephone on Friday, March 22, 1974, seeking to purchase a fork lift truck, a Lull Diesel High-Lift 400–34 (hereinafter "Lull fork lift"). Mr. Granahan's call was returned by Mr. William Agster, the President of plaintiff. In the phone conversation which followed, Mr. Granahan identified himself, stated that he was the owner of a piece of Lull construction equipment, told Mr. Agster that he needed a Lull fork lift immediately on the job site where he was a masonry sub-contractor, and that he desired to purchase a new Lull fork lift immediately. A price of $28,832.00,

including Pennsylvania sales tax, was quoted by Mr. Agster for the Lull fork lift and accessory equipment. Mr. Agster told Mr. Granahan that the necessary paper work on the sale would be prepared the first thing the following week and the truck would be made ready for delivery. On that same day, March 22, 1974, Mr. Agster prepared a paper labelled "Quotation", addressed to Mr. Granahan, which specifies the truck with its equipment and the price of $28,832.00. This document is signed by both Mr. Agster and Mr. Granahan and is in the record as plaintiff's Exhibit # 1. A document labelled "Invoice" to "Advance Masonry," dated April 1, 1974, specifies the truck with its equipment, the sale price of $28,832.00 and also states that the truck was picked up on March 29, 1974. This "Invoice", which is also signed by Mr. Granahan, is in the record as plaintiff's Exhibit # 2. No payment was made to the plaintiff at the time the truck was delivered. It was understood by the parties that Mr. Granahan would go to his bank and obtain financing in order to pay the plaintiff. Mr. Agster, thereafter, made a number of telephone calls to Mr. Granahan, which calls were not returned. Mr. Agster then visited Mr. Granahan at the job site on several occasions demanding payment. On one of these visits Mr. Granahan advised him that his (Mr. Granahan's) bank turned down his request for financing. Mr. Granahan then asked Mr. Agster to sell his old Lull truck and stated that the net proceeds from the sale would be applied to the purchase price of the new Lull fork lift. Mr. Agster succeeded in selling the old truck on or about May 1, 1974, to a Mr. DiGregorio for $13,400.00, which was paid by a check made out to Mr. Granahan. Mr. Granahan testified that he cashed the $13,400.00 check and turned the money over to an attorney who was handling the dissolution of a partnership in which Mr. Granahan was

---

1. Neither party has raised the issue of whether New Jersey or Pennsylvania law should be applied; they have assumed that Pennsylvania law is applicable. We have applied the Pennsylvania law of contracts and agency which is substantially the same as New Jersey law with regard to the issues raised in this lawsuit.

once a partner. The plaintiff never received any of these funds. On June 10, 1974, the plaintiff, having received no money, caused the Lull fork lift to be repossessed.

On and after March 29, 1974, until June 10, 1974, the Lull fork lift was used continuously on the job by Mr. Granahan. Mr. Granahan never questioned the purchase price, never complained about the truck's performance and never stated that he would not pay. At the time of trial, Mr. Agster testified that he was offering the repossessed Lull fork lift for sale but had been unable to sell it.

Mr. Granahan does not contest that there was an agreement to purchase the Lull fork lift for $28,832.00. In the stipulation of facts entered into between the parties in the Final Pre-Trial Order, it is stated:

> Plaintiff agreed to sell to defendant a Lull Diesel High Lift 400–34 Serial No. 1451 NW (along with necessary equipment). For said Lull Lift, defendant agreed to pay TWENTY–EIGHT THOUSAND EIGHT HUNDRED THIRTY–TWO ($28,832.00) DOLLARS, per plaintiff's original quotation, NO. 009294 [Exhibit # 1]. Plaintiff then delivered said equipment to defendant. Defendant not only failed to pay for the equipment, which was delivered, but also continued to use the equipment until plaintiff repossessed it.

It is therefore undisputed that there was a sale of the Lull fork lift for $28,832.00. The defendant, Mr. Granahan, however, offers several reasons for his position that he is not liable for the purchase price. First, he contends that the plaintiff failed to perform an essential condition of the contract, i. e., secure financing for him. Second, he contends that the contract was a "sale on approval" under which he had no obligation to accept the Lull fork lift and pay the purchase price. Third, he contends that the contract of sale was between the plaintiff and "Advance Masonry, Inc.", a Pennsylvania corporation, which is not a party to this suit, and he is therefore not personally liable.

■ First, as to Mr. Granahan's claim that the plaintiff was obliged to secure financing for him, Mr. Agster, who made the sale denies that financing was discussed. He testified that the plaintiff does not finance or procure financing for its customers. The "Quotation" and the "Invoice" make no mention of financing. In this case, the terms of the agreement of sale, as set forth in the "Quotation" and the "Invoice", both of which are signed by Mr. Granahan, evidence a complete agreement between the parties. We find that there is no credible evidence in this record that the plaintiff was obligated to obtain financing or that the sale of the Lull fork lift was conditioned upon Mr. Granahan obtaining financing.

■ Second, Mr. Granahan contends that the transaction in question was a "sale on approval" under which he had no obligation to pay for the Lull fork lift. The "Invoice" which Mr. Granahan signed states: "Machine delivered on approval until 4/1/74." The defendant testified that he was told by Mr. Agster's secretary when he took delivery of the truck on March 29, 1974, that he had the truck as a demonstrator until April 1, 1974, and that if he did not want the truck it would be picked up. The evidence in this record is uncontradicted that Mr. Granahan used the truck continuously from the date he took delivery, March 29, 1974, until the day it was repossessed by the plaintiff on June 10, 1974, without ever having uttered a word of dissatisfaction or offering to return the truck. We find, therefore, that there is no credible evidence in this record which would permit this Court to find that Mr. Granahan was not obligated to pay for the Lull fork lift after April 1, 1974. Section 2–327 of the Uniform Commercial Code, 12A P.S. § 2–327, specifically provides in pertinent part:

> (1) Under a sale on approval unless otherwise agreed

(b) use of the goods consistent with the purpose of trial is not acceptance but failure seasonably to notify the seller of election to return the goods is acceptance . . . .

The term "sale on approval" does not relieve Mr. Granahan of any liability in connection with the sale herein.

Lastly, Mr. Granahan contends that he is not personally liable. He testified that the contract was between the plaintiff and "Advance Masonry, Inc.," which is not a party to this lawsuit. Mr. Granahan claimed that he was acting as an agent for the corporation in this transaction. He introduced into evidence a "Certificate of Incorporation" for "Advance Masonry, Inc." He testified that the address of the corporation was the same as his home address and that during the period in question he was doing business as the agent of "Advance Masonry, Inc."

The Court must therefore determine whether the defendant, John J. Granahan, is personally liable to the plaintiff for the price of the Lull fork lift.

 It is well established as the law of Pennsylvania that an agent who enters into a contract without authority or without disclosing that he is acting for a principal or without disclosing the identity of his principal is personally liable on the contract. *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407 (1968); *Restatement* (Second) *Agency* §§ 320, 321 and 322 (1957). Thus, where one is confronted with an undisclosed agency situation the law provides: "An authorized agent who executes a contract for an undisclosed principal becomes a party thereto and stands in the place of his principal and is subject to the obligations of his principal." *Pennsylvania Co. v. Clark*, 340 Pa. 433, 447–48, 18 A.2d 807, 814 (1941). Likewise Section 322 of the *Restatement* (Second) *Agency* provides specifically:

An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract.

The *Restatement* (Second) *Agency* defines an undisclosed principal in § 4(3) as follows:

If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal.

Mr. Agster, testifying on behalf of the plaintiff, stated that Mr. Granahan never disclosed to him that he was acting in the transaction as an agent for the corporation. Nor did Mr. Granahan testify that he advised Mr. Agster that he was acting on behalf of the corporation. We find on the basis of the credible evidence in this record that Mr. Granahan did not disclose to the plaintiff that he was acting on behalf of "Advance Masonry, Inc." Furthermore, the plaintiff had every reason to believe that the transaction was with Mr. Granahan personally and had no knowledge of the existence or identity of the corporation. The "Quotation" was directed to Mr. Granahan at his home address and was signed by him personally, without any indication that he was an agent. The "Invoice" was also signed by Mr. Granahan personally without any indication that he was an agent. The "Invoice" is addressed to "Advance Masonry" and not to "Advance Masonry, Inc." The testimony was uncontradicted that this was done at the request of Mr. Granahan without his disclosing that "Advance Masonry" was the name of a corporation, the address of which was the same as Mr. Granahan's home address. Therefore, the Court finds that Mr. Granahan is personally liable on the contract for the sale of the Lull fork lift.

 Although the plaintiff in its complaint demanded judgment solely against the defendant, Mr. Granahan, in the sum of $28,832.00 plus interest from April 1, 1974, in its requested Findings of Fact and Conclusions of Law, it seeks a joint and several judgment against John J. Granahan and "Advance Masonry Company." The plaintiff did not name "Advance Masonry Company" in its complaint; nor did it serve "Advance Mason-

ry Company." Even were we to assume that the plaintiff is now requesting judgment against "Advance Masonry, Inc.," it is not a party, it was not served and no one entered an appearance for it in this action. This Court will not therefore enter judgment against the corporation.

What remains to be determined is the amount of damages to which the plaintiff is entitled. The plaintiff has requested that he be granted judgment in the amount of the full purchase price of the Lull fork lift plus interest.

■ Mr. Granahan accepted and used the Lull fork lift, never rejected or revoked his acceptance and thereafter failed to pay the purchase price when due. The plaintiff is entitled to the entire purchase price of $28,832.00 plus interest for the period from April 1, 1974, to the date of the entry of the Court's judgment order herein. 12A P.S. § 2–709.

Although the plaintiff is entitled to recover the purchase price of $28,832.00 plus interest from April 1, 1974, § 2–709(2) of the Uniform Commercial Code, 12A P.S. § 2–709(2), provides that if resale becomes possible the plaintiff may resell the truck for a reasonable price at any time prior to the collection of the judgment and the net proceeds of such resale must be credited to the defendant.

This Memorandum shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Accordingly, the following Order is entered:

### ORDER

AND NOW, to wit, this 31st day of March 1976, it is hereby ORDERED that judgment be and the same hereby is entered in favor of the plaintiff, Delaware Valley Equipment Company, Inc. and against the defendant John J. Granahan, in the amount of $32,291.84.