ELECTIONS BOARD, Plaintiff-Appellant,

v.

Walter L. WARD, Jr., and Friends of Ward, Defendants-Respondents.

Supreme Court

*No. 80–1983. Argued November 30, 1981.—*
*Decided January 18, 1982.*

(Also reported in 314 N.W.2d 120.)

For the appellant there were briefs and oral argument by *Kevin J. Kennedy,* legal counsel, state elections board, of Madison.

For the respondents there was a brief by *Vernon L. Peterson, Stephen E. Gavin* and *Gavin, Miller & Collins,* all of Madison, and oral argument by *Frederick H. Miller.*

HEFFERNAN, J.   The question presented on this appeal is whether the personal campaign committee of a candidate for state office, in this case the personal campaign committee of Walter L. Ward, Jr., a candidate for state representative, can be sued by the State Elections Board for civil forfeitures under sec. 11.60(1), Stats., and for injunctive relief under sec. 11.66 to compel compliance with the Campaign Financing Act.

We conclude that a personal campaign committee, as defined by sec. 11.01(15), Stats., is a voluntary association which may be sued by the Elections Board. Accordingly, we reverse the order of the Circuit Court for Dane County, which granted the motion to dismiss the action against "Friends of Ward," the voluntary campaign committee, and remand for further proceedings.

The record shows that a complaint was filed by the State Elections Board under authority granted by secs. 5.05(1) and 11.60(4), Stats., against Walter L. Ward, Jr., the candidate, and "Friends of Ward" on April 22, 1980, for some 85 causes of action for alleged violations of the Campaign Financing Act during the course of Ward's campaign for state representative in the election of 1978. The alleged violations appear to have occurred between January 1, 1977, and January 31, 1979.

Defendants moved to dismiss the complaint against Ward and his committee. The motion to dismiss the complaint against Ward was denied. The motion to dismiss the complaint against the committee was granted.

The Elections Board appealed the dismissal order to the court of appeals. Following oral argument, the court of appeals requested that this court accept certification under sec. 809.61, Stats., on the grounds that the case was of first impression under the Campaign Financing Act, and raised what the court of appeals referred to as:

". . . the haunting realization that if personal campaign committees are subject to civil forfeiture, there may be far-reaching consequences which the high court should consider. For example, while the Elections Board now has the power to sue an individual other than a candidate or treasurer, reversal of this case [circuit court order] might mean that individual members of the committee may be held accountable for something over which they have no control. Should the Elections Board be successful in obtaining a forfeiture without having to prove *scienter* and should the assets in the personal campaign committee be insufficient to satisfy the judgment, then can the individual members jointly and severally be held liable for the debt? If so, might this not be a violation of the first and fourteenth amendments which guarantee the 'freedom to associate with others for the common advancement of political beliefs and ideas.'"

Because of the arguable significance of issues urged in the court of appeals' petition, we granted certification and took jurisdiction of the Board's appeal from the dismissal order of the Circuit Court for Dane County.

We are satisfied from our analysis of both the Campaign Financing Act and the decisional law of Wisconsin relating to voluntary associations that a personal campaign committee may be sued for civil forfeitures by the Elections Board and is subject to suit for injunctive relief. We find, however, no provision or intimation in the Act that members of the committee may be personally liable for a forfeiture merely because they are mem-

bers of the personal campaign committee. Hence, although we reverse the trial court order, we find no possibility of any individual liability as the result of committee membership *per se* for civil forfeitures resulting from election law violations.

The pattern of Wisconsin law, both common and statutory, leads to the conclusion that a personal campaign committee is a suable entity.

Turning first to the statutes, the section under which the Board has brought its action is sec. 11.60(1), Stats. 1977:

> "11.60 **Civil penalties.** (1) Any person, committee or group who violates this chapter may be required to forfeit not more than $500 for each violation."

It is acknowledged that "Friends of Ward" is a personal campaign committee. A personal campaign committee is defined by sec. 11.01(15), Stats. 1977:[1]

> " 'Personal campaign committee' means a temporary committee formed for the exclusive purpose of electing or reelecting a candidate to office which is under the direct control of the candidate."

Hence, as a "temporary committee," it falls squarely within the term, "committee," as defined in sec. 11.01 (3), Stats. 1977:[2]

---

[1] The 1979–80 statutes define a personal campaign committee in somewhat different terminology, but in substance the definition is the same. Sec. 11.01(15), Stats. 1979–80, provides as follows:

"(15) 'Personal campaign committee' means a committee which is formed or operating for the purpose of influencing the election or reelection of a candidate, which acts with the cooperation of or upon consultation with the candidate or the candidate's agent or which is operating in concert with or pursuant to the authorization, request or suggestion of the candidate or the candidate's agent."

[2] "Committee" is identically defined in sec. 11.01(4), Stats. 1979–80.

" 'Committee' or 'political committee' means any person other than an individual and any combination of 2 or more persons, permanent or temporary, which makes or accepts contributions or makes disbursements for political purposes, whether or not engaged in activities which are exclusively political, except that a 'committee' does not include a political 'group' under this chapter."

Accordingly, there is no doubt that the legislature intended that a personal campaign committee be answerable in a forfeiture action brought by the Board under sec. 11.60, Stats. 1977. Section 11.60(4) specifically refers to "Actions under this section."

Because it is very clear that the statutes contemplate Board "actions" against violating personal campaign committees for the recovery of forfeitures, it logically and inevitably follows that the legislature impliedly intended that a personal campaign committee be a suable entity.

This court has long followed the rationale that, if the legislature imposes either an affirmative duty to act or an obligation to respond that can only be satisfied by the capacity to sue or be sued, it will be concluded that the legislature by implication has conferred upon the entity whatever attributes are required to make effective the legislative intent.

In *Crawley v. American Society of Equity*, 153 Wis. 13, 17, 139 N.W. 734 (1913), this court restated the common law rule that a voluntary association ordinarily had neither the capacity to sue or to be sued. The court said:

"Being neither organized under our statutes nor incorporated, the *Wisconsin State Union* is a mere voluntary association and an action to enforce any liability it may have incurred must be brought against the individual members thereof. [Citations omitted] In Niblack, Ben. Soc., p. 183, the rule is thus stated:
" 'In the absence of statutory regulation permitting an unincorporated society to sue or to be sued in the name by which it is commonly designated, the members must

sue or be sued as partners or persons jointly interested.' "

Thus, pursuant to the common law rule—and in the absence of any statutory guidelines or implications permitting suit against the association—members of the association could incur personal liability for *contractual* obligations of the association.

This common law rule was applied in *Vader v. Ballou,* 151 W. 577, 139 N.W. 413 (1913). There the committee had been formed for the purpose of furthering the candidacy of a Mr. S.A. Cook for the United States Senate. Ballou was a member of the committee. Among other activities on behalf of Cook, the committee, through one of its members—not Ballou—contracted for printing with Vader. Upon nonpayment, Vader commenced suit against Ballou. The court, recognizing that the campaign committee was not a suable entity because it was a voluntary association, stated:

"Each member of a voluntary association is liable for the debts thereof if incurred during his period of membership and contracted for the purpose of carrying out the objects for which the association was formed." *Supra* at 579.

The court concluded that members of voluntary associations were jointly and severally liable for such contractual obligations. Accordingly, Ballou was held answerable for the whole amount.

*Vader* is significant for at least two reasons: It is premised upon the holding that a political campaign committee at common law is to be treated as a voluntary association; and, additionally, consistent with that premise, a member of a campaign committee may be held jointly and severally liable for contractual obligations "appropriate to the purpose for which the voluntary organization was formed" (*supra* at 578), where the ob-

ligation was for "a disbursement necessary to their effectual work" (*supra* at 579). The rule of *Vader* was found applicable in *Hafenbraedl v. LeTendre for Congress Committee,* 61 Wis. 2d 665, 213 N.W.2d 353 (1974).

Thus, it is at once apparent—whatever may be the liability of a campaign committee as an entity—that the liability of individual members under the common law of this state is limited to contract for goods or service appropriate and necessary to the purpose for which the committee was formed. We have found no rule that would impose liability upon individual members of a political committee that goes beyond *Vader.* No rule of common law in this state imposes joint or several liability upon a committee member for other than contractual obligations.

[1]

The statute imposes liability upon the candidate, the campaign treasurer, the committee, and any other person (who could be a committee member) who committed a Campaign Financing Act violation. But no liability is imposed by virtue of committee membership. Hence, under the law of this state, the court of appeals' concern about the chilling effect upon the political process if committee members are to be held liable for committee breaches, need not be addressed. No such liability exists under the common law, nor has it been imposed by statute.[3]

---

[3] While the fears expressly addressed by the Court of Appeals will not be realized by our holding in this action, the majority of the court cannot refrain from expressing its belief that the Campaign Financing Act is unnecessarily technical and prolix. Because we find these rules to be unnecessarily technical, we anticipate that many unwary citizens, in their zeal for a candidate or cause, may, notwithstanding their good faith, commit technical violations which may result in penalties that cast an aura of criminality over what are basically innocent acts. We are not convinced that the health of Wisconsin politics is enhanced by

Concomitant with the development of the Wisconsin common law that members of a voluntary association could be held individually liable for some contractual obligations of the association came the development of a rationale upon which certain voluntary associations were held suable, although the statutes did not expressly so provide and although the association was not *sui juris* as the result of incorporation.

*Teubert v. Wisconsin Interscholastic Athletic Asso.*, 8 Wis. 2d 373, 99 N.W.2d 100 (1959), is representative. In *Teubert*, the plaintiff sought to state a claim against the WIAA, which operated an accident benefit plan organized under certain sections of the statutes. The defendant association moved to have the action dismissed on the grounds that the court did not have jurisdiction over it because it was not a "corporate entity which [could] be sued." *Supra* at 374–75. The court pointed out that, under the statutes, the association was given the power to contract, the authority to maintain sufficient reserves to discharge obligations, and the power to borrow money. The court then went on to review the developing policy of the law that a suit might be maintained against such an association because these statutes gave rise to the implication that the association necessarily must be subject to suit. The court relied on *United Mine Workers v. Coronado Co.*, 259 U.S. 344 (1922), in which the United States Supreme Court held that a labor union, which it recognized to be a voluntary unincorporated association, could be sued as an entity in its own name rather than only in the name of each of its members. Funds accumulated by the union could be used to satisfy claims against it. The Wisconsin court in *Teubert*, following *United Mine Workers*, held that the WIAA could be sued

the enactment of these overly-complex campaign laws. The theory of the Act is commendable, but its multitudinous details are traps for the honest but unwary. The Act in itself may well chill citizen participation.

"as an entity and that the common fund devoted to paying benefits [could] be reached to respond in damages in such a suit." *Supra* at 377.

Hence, by 1959 the decisional law of this state recognized that unincorporated associations, which by the statutes had attributes of legal entities, could be sued as such and the association's funds used to discharge a liability.

Then, by the Laws of 1959, ch. 226, the Wisconsin legislature, when it repealed and recreated ch. 262, Stats. 1959, effective July 1, 1960, explicitly recognized that unincorporated associations may be suable entities. The relevant sections of that chapter, now secs. 801.03(1) and 801.11(7), state:

"801.03 **Jurisdiction; definitions.** In this chapter, the following words have the designated meanings:

"(1) 'Person' means any natural person, partnership, association, and body politic and corporate."

"801.11 **Personal jurisdiction, manner of serving summons for.** A court of this state having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in s. 801.05 may exercise personal jurisdiction over a defendant by service of a summons as follows:

". . .

"(7) OTHER UNINCORPORATED ASSOCIATIONS AND THEIR OFFICERS. A summons may be served individually upon any officer or director known to the plaintiff of an unincorporated association other than a partnership by service in the manner prescribed in sub. (1), (2), (5) or (6) where the claim sued upon arises out of or relates to association activities within this state sufficient to subject a defendant to personal jurisdiction under s. 801.05 (2) to (10). A judgment rendered under such circumstances is a binding adjudication against the association as to its assets anywhere."

Thus, by July 1, 1960, some unincorporated associations were subject to civil suits as legal entities separate from

their individual members and a judgment reached association assets. In a Campaign Financing Act civil forfeiture action with characteristics of both civil and criminal proceedings, it seems clear that an action against the association as an entity can result only in a forfeiture payable out of the assets of the association.

We need not, however, in this action conclude that all unincorporated or voluntary associations are suable. The question presented is whether a personal campaign or political committee, as defined in ch. 11, may be sued. The answer is clearly "yes" under the rationale of *Teubert,* because the statutory scheme under which a political committee is formed contemplates that the committee may acquire and disburse assets and, most importantly, in sec. 11.60, Stats., is made specifically answerable to "actions" for civil forfeitures for violation of the Campaign Financing Act—in this case, "Friends of Ward"—may be sued as a personal campaign committee.

Only the committee itself is made subject to suit, not its members, for any civil forfeitures sought by the Elections Board.

In this action for the collection of a forfeiture, only the assets of the committee are subject to a possible judgment. The assets of the individual committee members are not reachable in a forfeiture action against the committee.

We again emphasize, however, that this opinion contemplates no immunity for individual committee members who have as individuals violated the Campaign Financing Act. Clearly, under some circumstances, they may be liable for civil forfeitures as "persons" under sec. 11.60, Stats., although there is no potential liability merely because they are committee members.

We hold that the personal campaign committee of Walter L. Ward, Jr., "Friends of Ward," is subject to suit.

*By the Court.*—Order reversed and cause remanded for further proceedings.