The **BOSTWICK–BRAUN COMPANY,** an Ohio corporation, Plaintiff,

v.

Nicholas E. **SZEWS** and Nancy G. Szews, Defendants.

No. 86–C–515–S.

United States District Court, W.D. Wisconsin.

Oct. 14, 1986.

Jerome R. Kerkman, Cook & Franke, Milwaukee, Wis., for plaintiff.

Richard E. Rosenberg, Nowlan & Mouat, Janesville, Wis., for defendants.

## ORDER

SHABAZ, District Judge.

Before the Court is the motion of defendants for summary judgment. The motion addresses the questions of whether defendants are personally obligated to the plaintiff for debts incurred in their business, and if not, whether plaintiff can pierce the corporate veil to make the defendants personally liable for the debts. The facts as they are pertinent to the motion follow.

## FACTS

Plaintiff Bostwick-Braun Company is an Ohio corporation with its principal offices in Toledo, Ohio, and is a distributor of hardware products. Defendants Nicholas and Nancy Szews are husband and wife and were citizens of the State of Wisconsin at the time this action was filed. Plaintiff's complaint seeks $39,899.12, an amount allegedly due from defendants for purchases from plaintiff.

Plaintiff's first theory of recovery is grounded on a contract allegedly entered into between the plaintiff and defendants in August 1980. The written agreement, effective as of August 8, 1980, was entitled "'PRO' HARDWARE RETAILER FRANCHISE," and recites that "This franchise is granted to: WESTOWNE PRO HARDWARE" with a Janesville, Wisconsin address. The following is a facsimile of the agreement's signature page:

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the effective date set forth below.

The Bostwick-Braun Company
Wholesaler

By: _D M Pringhmer, Jr._

Title _____

Effective date of this Franchise Agreement:

Retailer _Nancy G. Szews_ _Nicholas E. Szews_

8　8　1980
Month　Day　Year

By: WESTOWNE PRO
Title

This agreement was prepared by plaintiff. It granted a retailer the right to operate a hardware store under the "PRO" set of trademarks, and obligated the grantor to sell the retailer merchandise for resale. The agreement also included other terms

common to franchise agreements, such as cooperative advertising, and also required the retailer to pay for merchandise delivered within the "Wholesaler's Discount period." Defendants allegedly ceased doing business in early 1986 with an outstanding balance of $39,899.12 owing to plaintiff.

On August 5, 1980, three days before the effective date of the franchise agreement, defendants executed and filed in the office of the Wisconsin Secretary of State Articles of incorporation for the "BENNS CORP." Nicholas was listed as incorporator, Nicholas and Nancy were listed as directors, and James R. Thorpe was listed as the corporation's registered agent.

A document produced by plaintiff in opposition to the motion is entitled "Collection Follow-up" and was prepared for plaintiff's customer, Westowne Hardware. It lists two contacts made on August 6, 1980 by agents of the plaintiff. The first, with the Rock County Bank, discloses that the Bank was making a loan for 60 percent of the appraised value of a building to be constructed and noted that the customer was opening a business checking and savings account in addition to a personal account. The other contact, a notation in handwriting as was the first, apparently also with the Bank, noted the following:

Phil Nelson
approved a loan for corp. but he hasn't taken up $ yet until necessary.
$130,000—set up on a monthly repayment
—been plant manager
—high caliber person
hired good CPA
    " good attorney
Bank feels confident of abilities.
    (putting some of his personal assets on line)

Also submitted by plaintiff is a document prepared by plaintiff's agents entitled "New Account Request" which listed the applicant's company name as "Westowne Pro Hdwe." On a line calling for information on whether the company was a division or subsidiary of another is listed "Benns Inc." The document lists Nick Szews as

owner and under "comments" notes that he worked at Dana Corporation as an electrical engineer and had a net worth of $400,000. The request is dated August 6, 1980, and the request was approved by both credit and sales agents of plaintiff on August 18, 1980.

A series of documents executed by Nicholas E. Szews were also submitted by plaintiff, which represented his request or consent to participation in a number of plaintiff's sales programs. All of these requested a signature and a store name. Szews signed on the signature line, Westowne Pro Hardware was the store name listed, and all of these documents were executed on August 5, 1980.

Also submitted by plaintiff was an intercompany memo dated August 6, 1980. It listed the banking and construction plans of the customer "Westowne Pro Hdwe." The memo recites that the information in the memo was supplied by Ray Medina, plaintiff's agent in charge of dealing with the defendants. The memo notes that the customer had a net worth of $400,000.

Finally, plaintiff submitted a franchise notification to the licensor of the "Pro Hardware Stores" trademark, specifying that it had granted a franchise to "Westowne Pro Hardware" of Janesville, and listed the "Owner's Name(s)" as Nick and Nancy Szews.

In 1982, in response to billing disagreements, a "Settlement Agreement" was executed. The agreement recited that the agreement was entered into between the plaintiff and "Benns Corporation, a Wisconsin Corporation, doing business as Westowne Pro Hardware...." After enumerating invoices and various credits, the agreement recited that:

2. Upon payment of the sum of ... ($27,086.50) ..., the account of Benns Corporation doing business as Westowne Pro Hardware would be placed on a current status and would be entitled to the Two Percent (2%) discount ...

\* \* \* \* \* \*

4. ... A financial statement showing the financial condition of Benns Corporation, d/b/a Westowne Pro Hardware as of June 30, 1982, will be delivered to Bostwick by July 28, 1982.

This agreement was signed by the defendants in their capacity as officers of the Benns Corporation, d/b/a Westowne Pro Hardware. A $14,000 line of credit agreement between plaintiff and Benns Corporation was entered into at the same time, along with the execution of a personal guaranty by Nicholas Szews in the same amount "For value received and in consideration of the Bostwick-Braun Company ... having extended credit to the BENNS Corporation d/b/a Westowne Pro Hardware." The personal guaranty expired on January 31, 1983. Finally, the debt of $27,-086.50 acknowledged in the above agreement was paid by a check of the BENNS Corporation d/b/a Westowne Pro Hardware on July 21, 1982.

## MEMORANDUM

By virtue of the diverse citizenship of the parties and amount in controversy, jurisdiction is properly invoked under 28 U.S.C. § 1332.

■ The question of whether the Szews signed the franchise agreement in their individual capacities (and thus are personally liable) is a question of fact. The Court concludes that upon the record produced by the parties there is no genuine material dispute about this question. The agreement in question was between plaintiff and a corporate entity owned by the defendants, and was not one between plaintiff and defendants personally.

Virtually every piece of evidence in the record raises an inference that the Szews were contracting on behalf of a corporation and that plaintiff's agents knew it. The signature page of the agreement itself was formulated by plaintiff to reflect that the agreement was between a wholesaler and a retailer and was to be signed by officers or agents of each. The fact that the retailer name was placed on the wrong line and that the Szews signed the agreement without specifying their corporate titles does not necessarily indicate that they signed in their individual capacities. The agreement was between plaintiff and a retailer identified as Westowne Pro Hardware. Whether that entity was the d/b/a of another entity or the individuals signing the document is a question not answered by the document itself. Plaintiff's attempt to apply Wis. Stat. § 403.403 is thus not only incorrect (it applies only to commercial paper), but it would not lead to the result urged by the plaintiff even if it were applicable.

The other documents of record which were executed contemporaneously with the agreement point ineluctably to the conclusion that the Szews were corporate agents. The incorporation of the BENNS Corporation was contemporaneous (thus raising the inference that the corporation was incorporated for the purpose of carrying on this business), and the corporation itself was noted in the New Account Request. The "Collection Follow-up" noted the bank contacts made by plaintiff in contemplation of the franchise agreement and explicitly noted that the bank was approving a corporate loan. This document also noted that plaintiff was, according to the bank, putting some of his own assets at risk (presumably indicating creditworthiness). As defendants point out, one who goes into business without incorporating does that automatically. Thus the inference is clear that defendants were entering into the agreement as agents for a corporation, not in their personal capacity.

The agreements signed by Nicholas Szews consenting to participation in plaintiff's various sales programs did not mention the corporation, nor did they note in what capacity he was signing. But again, these documents were prepared by plaintiff and they merely requested a signature and the store's name. They do not indicate any intent to be personally liable for the purchases to be made. The notation on the intercompany memo that the "customer" identified as Westowne Pro Hardware had a net worth of $400,000 is not indicative of anything more than the drafter's careless-

ness, since the plaintiff's notes can hardly bind the defendants to a contract personally and the other evidence indicates an understanding of the corporate entity.

Any doubt is dispelled by the Settlement Agreement executed two years after the beginning of the franchise arrangement. The agreement is explicitly between plaintiff and the BENNS Corporation. Paragraph 2 of the agreement is compelling evidence that the plaintiff had been treating this customer as a corporate entity. It was the account of the BENNS Corporation which was being placed on current status, implying that the same account with the same customer had not been current before. In return for the settlement agreement Nicholas Szews signed a personal guaranty which was obviously unnecessary if her were personally liable under the contract.

The above analysis of the evidence of record is justified in the context of a summary judgment motion. The Supreme Court recently had reason to delineate the scope of such motions in two cases. In *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court stated that:

> Our prior decisions may not have uniformly recited the same language in describing genuine factual issues under Rule 56, but it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.... If the evidence is merely colorable, ... or is not significantly probative ... summary judgment may be granted.

—— U.S. at ——, 106 S.Ct. at 2511, 91 L.Ed.2d at 212 (citations omitted). As the Court made clear, it is the burden of the *nonmoving party* to show, by specific facts, the existence of a genuine issue for trial. The question for the Court is to decide the

need for a trial in light of the facts presented, and the analysis mirrors that for a directed verdict which is required when "there can be but one reasonable conclusion as to the verdict." *Id.* —— U.S. at ——, 106 S.Ct. at 2511, 91 L.Ed.2d at 213. In another case decided the same day, *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court pointed out that:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

—— U.S. at ——, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. *See Also Ruther v. Robins Engineering,* Case 802 F.2d 276 (7th Cir. 1986).

In this case every piece of evidence presented by either party that has any probative value points to the conclusion that plaintiff entered into a franchise agreement with the BENNS Corporation, not with the defendants. While plaintiff asserts that no discovery has taken place in this matter as yet, the Court did not suspend discovery. The only evidence mentioned by plaintiff that might bear on this issue is the testimony of D.M. Humphries, Jr., and Ray Medina, neither of whom work for plaintiff any longer. Not only is there no indication that anything done by defendants or the Court hindered plaintiff in presenting such evidence, there is no reason to believe that such evidence would contradict the documentary record in this case. Indeed, the evidence is so one-sided that defendants must prevail as a matter of law. *Anderson,* —— U.S. at ——, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Accordingly, summary judgment on plaintiff's contract claim must be granted to defendants.

Plaintiff's other claim, which seeks to pierce the corporate veil to impose liability for the corporate debt on the defendants, presents a different problem. The proposed findings of fact submitted by defendants do not touch upon this claim except to assert that the documents in the record "imply that Bostwick-Braun had opportunities to investigate and evaluate the capitalization of BENNS Corporation and Westowne Pro Hardware from 1980 to 1986." The Court is thus compelled to assume that the corporation was in fact undercapitalized. The lack of evidence on this issue does not entitle defendants to summary judgment by the simple expedient of a "conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex, supra,* — U.S. at —, 106 S.Ct. at 2555, 91 L.Ed.2d at 277 (White, Justice, concurring).

The question therefore is the legal sufficiency of such a claim. Both parties agree that there is no reported Wisconsin case allowing creditors to pierce the corporate veil because of inadequate capitalization. The Wisconsin Supreme Court, citing the United States Supreme Court decision in *Anderson v. Abbott,* 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793 (1944), did state in dicta that there were exceptions to the general rule of limited liability for shareholders in cases where public policy demanded it, in cases of fraud, and in cases "when there was an obvious inadequacy of capital, 'measured by the nature and magnitude of the corporate undertaking.'" *Ruppa v. American States Ins. Co.,* 91 Wis.2d 628, 284 N.W.2d 318, 324 (Wis.1979). The Court stated that none of these exceptions was available in the case, but did not separately address the question of inadequate capitalization. In another case, the Wisconsin Supreme Court allowed the recovery of funds from a corporation for a debt the corporation contended was a personal one of its sole shareholder, concluding that the corporation did not have an existence apart from that of its shareholder under the circumstances of the case. *Wiebke v. Richardson*

*& Sons, Inc.,* 83 Wis.2d 359, 265 N.W.2d 571 (Wis.1978). The Court stated that,

> If applying the corporate fiction would defeat some strong equitable claim, the fiction is disregarded and the transaction is considered as one of the individual himself or of the corporation, whichever will prevent the inequitable result ...

*Id.* at 573 (citation omitted). Perhaps most pertinent of all, in *In Re Mader's Store for Men, Inc.,* 77 Wis.2d 578, 254 N.W.2d 171 (1977), the Court discussed how to accommodate the competing interests of creditors and shareholders, and mandated a determination of the adequacy of capital in a case involving the subordination of the claims of a creditor of an insolvent corporation who was also a major shareholder.

■ These cases compel the conclusion that Wisconsin courts would entertain an action to pierce the veil of an inadequately capitalized corporation. Defendants, however, alternatively argue that plaintiff is estopped from this claim because of aforementioned foregone opportunity to evaluate the capitalization of the BENNS Corporation. The Court notes from the evidence that plaintiff was aware that it was doing business with a corporation at the outset of the franchise. There is also paragraph 4 of the settlement agreement which required a BENNS Corporation financial statement to be delivered by July 28, 1982. There is no indication in the record whether the financial statement was delivered, nor whether plaintiff analyzed it. Nevertheless, the Court must conclude that defendants' proposed finding of fact that plaintiff had the opportunity to evaluate the financial condition (including the capitalization) of the BENNS Corporation is justified by the record.

■ According to defendants, this fact establishes both waiver of undercapitalization and estops plaintiff from recovering on such a claim. Not surprisingly, defendants can offer no precedents applying waiver and estoppel to such a claim since there is no explicit recognition of such a claim in

Wisconsin. But the general contours of waiver and estoppel are known:

> If an individual intentionally relinquishes a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it. Estoppel, on the other hand, focuses on the effects of the conduct of the obligee. It arises when a party's conduct misleads another into believing that a right will not be enforced and causes the other party to act to his detriment in reliance upon this belief.

*J.H. Cohn & Co. v. AM Appraisal Assoc., Inc.,* 628 F.2d 994, 1000 (7th Cir.1980). Estoppel would appear to be established here by virtue of plaintiff's unexercised right to ascertain the capital structure of the BENNS Corporation coupled with the defendants' continued purchases of merchandise from plaintiff in the corporation's name. Defendants had the right to rely on plaintiff's failure to exercise its right. Even stronger is the waiver argument. Absent allegations of fraud, it is impossible to square plaintiff's conduct during the six years it did business with the corporation with anything but an intentional relinquishment of its right to challenge the corporation's adequacy of capital. Plaintiff continued to advance the corporation credit while it had the right (which it once exercised) to demand a financial statement to determine the capital structure.

Accordingly, summary judgment on plaintiff's claim to assess the defendants for the corporate debt by piercing the corporate veil is also indicated.

Having said all of this, nothing in the record indicates bad faith litigation or vexacious conduct on the part of plaintiff. Its case may have been fatally flawed, but it was not so utterly without merit at the outset to justify an award of attorneys' fees or costs other than those normally granted to a prevailing party.

## ORDER

IT IS ORDERED that defendants' motion for summary judgment is GRANTED, with costs to the defendants.

Let judgment be entered accordingly.