BENJAMIN PLUMBING, INC., Plaintiff-Appellant,

v.

Bette BARNES, Defendant-Respondent,

William K. WHITCOMB, Defendant-Respondent-Petitioner,

Harry LUDWIG and Response to Hunger, an Unincorporated Association, Defendants-Respondents.

Supreme Court

*No. 89-1334-FT. Argued April 23, 1991.—Decided June 20, 1991.*

(Also reported in 470 N.W.2d 888.)

For the defendant-respondent-petitioner there were briefs by *Diane Nicks,* Madison and oral argument by *Diane Nicks.*

For the plaintiff-appellant there was a brief by *Robert W. Aagaard,* Madison and oral argument by *Robert W. Aagaard.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals[1] reversing a summary judgment of the circuit court for Dane county, George A.W. Northrup, circuit judge, which dismissed an action brought by Benjamin Plumbing, Inc., against William K. Whitcomb individually for breach of contract. We affirm.

The circuit court found that, based on the undisputed facts, Benjamin Plumbing reasonably should have been placed on notice that it was not contracting with Whitcomb as a private individual but rather with the corporation, "Response to Hunger Network" (RHN), which Whitcomb was representing.

The court of appeals reversed the circuit court's summary judgment, holding that, because the agent Whitcomb did not in any way assume his duty to disclose the corporate status of his principal, RHN, he was liable to Benjamin Plumbing as a party to the contract. The court of appeals also rejected Whitcomb's defense that, as a director of RHN, a nonprofit corporation, he was immune from such contractual liability under sec. 181.287, Stats.[2]

---

[1]*Benjamin Plumbing, Inc. v. Barnes,* 156 Wis. 2d 276, 456 N.W.2d 628 (Ct. App. 1990).

[2] **181.287 Limited liability of directors and officers. (1)** Except as provided in subs. (2) and (3), a director or officer is not liable to the corporation, its members or creditors, or any person asserting rights on behalf of the corporation, its members or creditors, or any other person, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director or officer, unless the person asserting liability proves

We affirm the court of appeals, which held that Whitcomb, acting as an agent for a partially disclosed principal, is liable on the contract. We conclude that the undisputed facts known to Benjamin Plumbing at the time of contracting with Whitcomb did not raise a reasonable inference that RHN was a corporation, and accordingly Benjamin had no notice of the corporate identity of the principal. We also conclude that sec. 181.287, Stats., does not provide Whitcomb with any statutory immunity, because Whitcomb's liability did not arise "from a breach of, or failure to perform, any duty resulting solely from his . . . status as a director" of RHN.

The facts of this case are not in dispute. In 1987 Whitcomb contacted Benjamin Plumbing, Inc., an incorporated family plumbing business located in Madison, about the possibility of doing some plumbing

---

that the breach or failure to perform constitutes any of the following:

(a) A wilful failure to deal fairly with the corporation or its members in connection with a matter in which the director or officer has a material conflict of interest.

(b) A violation of criminal law, unless the director or officer had reasonable cause to believe his or her conduct was lawful or no reasonable cause to believe his or her conduct was unlawful.

(c) A transaction from which the director or officer derived an improper personal profit.

(d) Wilful misconduct.

(2) Except as provided in sub. (3), this section does not apply to any of the following:

(a) A civil or criminal proceeding brought by or on behalf of any governmental unit, authority or agency.

(b) A proceeding brought by any person for a violation of state or federal law where the proceeding is brought pursuant to an express private right of action created by state or federal statute.

(c) The liability of a director under s. 181.29.

(3) Subsection (2)(a) and (b) does not apply to a proceeding brought by a governmental unit, authority or agency in its capacity as a private party or contractor.

843

work on a canning project for the "Response to Hunger Network" on the Mendota State Hospital grounds.

In a letter dated May 5, 1987, to Donald Knapp, the general manager of Benjamin Plumbing, Whitcomb requested a "rock bottom" price for the plumbing work. The letter stated that a minimum subsistence rate would be appreciated because "we have to search for donations to pay for this work and in the end we do not even have a product that will bring us any income." Under Whitcomb's signature were the typed words, "William K. Whitcomb, For Response to Hunger Network." In the letterhead, however, were the words, "National Council of the Churches of Christ in the United States of America, CHURCH WORLD SERVICE," with Whitcomb listed as its regional director.

In a letter dated June 20, 1987, and addressed to "Response to Hunger, To Whom It May Concern," Knapp set forth Benjamin Plumbing's price quotations for work on the cannery project. The letterhead used by Knapp set forth the words, "Benjamin Plumbing, Inc."

In a letter to Knapp dated July 9, 1987, Whitcomb accepted Benjamin Plumbing's rates and authorized Knapp to start the work. Whitcomb advised Knapp that he could be reached at his Church World Service address and phone number. Under Whitcomb's signature were the typed words, "William K. Whitcomb, Canning Committee—RHN." The letterhead was captioned, "RESPONSE TO HUNGER NETWORK."

Benjamin Plumbing completed the work but was subsequently paid only $5,000 of the final bill, which amounted to $10,603.66. The appropriateness of the total bill is not disputed. On October 30, 1987, Benjamin Plumbing filed an "Application and Certificate for Payment," asking for payment of the balance. Response to

Hunger Network was listed in the document as the owner of the cannery project.

On December 6, 1988, Benjamin Plumbing, not having received payment, filed an action against Whitcomb and two other members of RHN individually and RHN as an unincorporated association. The complaint alleged that all the defendants were jointly and severally liable for the unpaid balance of the plumbing contract. In their answer, the defendants denied contractual liability and affirmatively asserted that "Response to Hunger Network, Inc., is a Wisconsin corporation formed pursuant to Chapter 181 of the Wisconsin statutes."

Thereafter, Benjamin Plumbing brought a motion for summary judgment supported by an affidavit of its corporate president, David Benjamin, and copies of the various letters exchanged by the parties. The defendants opposed that motion, claiming that Whitcomb was a corporate director and that the other members were corporate officers of RHN and, accordingly, that they were all statutorily immune under sec. 181.287, Stats. The defendants also asserted that the mere failure to utilize RHN's full corporate name (which under sec. 181.06 would include some form of the word, "incorporated")[3] when contracting does not automatically abrogate the statutory protections. The motion in opposition was supported by RHN's articles of incorporation and affidavits of Whitcomb and the other individual defendants.

The circuit court found that there were no material facts in dispute and considered the dispositive issue of

---

[3]Section 181.06 1987–88 provides in relevant part:

**181.06 Corporate name.** The corporate name:

(1) Shall contain the word "corporation", "incorporated", or "limited", or an abbreviation of one of such words; this subsection shall apply only to corporations organized or changing their name after the enactment of this chapter.

law to be whether RHN's failure to expressly identify itself as a corporation in the contract and other correspondence destroyed the "personal liability protection under Wisconsin statutes." Focusing on sec. 181.06, Stats.,[4] and case law from other jurisdictions interpreting similar "corporate name" statutes, the circuit court concluded that the defendants should not be stripped of their personal liability protection unless Benjamin Plumbing could prove that it was "injured or misled by such misdescription" (citing 19 C.J.S., *Corporations,* sec. 1136 (1940)).

Examining the exhibits submitted in support and opposition to summary judgment, the circuit court held that, while there was no specific reference to RHN's incorporated status anywhere in the correspondence, Benjamin Plumbing, "itself a corporate entity, should have been placed on notice that it was not dealing with private individuals." The letters clearly indicated that the plumbing work was for RHN. Thus, because Benjamin Plumbing did not affirmatively allege any special harm or that the corporate status was purposefully concealed, the circuit court declined to "pierce the corporate veil" and hold the defendants personally liable.[5]

Because Whitcomb individually contracted with Benjamin Plumbing without disclosing RHN's corporate status, the court of appeals reversed the circuit court's judgment dismissing the action against Whitcomb but affirmed it as to the other defendants. 156 Wis. 2d at 278-79.[6] Believing it was faced with an issue of first

---

[4]The circuit court inadvertently listed sec. 181.07 in its memorandum decision.

[5]In a footnote at the end of its opinion, the circuit court stated that the "undisclosed principal doctrine of agency law" was not argued by the parties and apparently was not controlling.

[6]The court of appeals reasoned that the other defendants

impression, the court of appeals adopted various "black letter" agency principles setting forth that a person making a contract for a "partially disclosed principal" is a party to the contract and liable for its breach and that a principal is partially disclosed when the other party has notice that the agent is acting for a principal but has no notice of the principal's (corporate) "identity." 156 Wis. 2d 280, (citing Restatement (Second) of Agency, secs. 4(2), 321 (1958)). As applied to corporate contracts, the court of appeals stated the general rule that an agent has a duty to disclose the corporate identity of the principal to avoid personal liability. 156 Wis. 2d at 280–81 (citing 3A W. Fletcher, *Cyclopedia of the Law of Private Corporations,* sec. 1120, at 237–38 (rev. ed. 1986), and case law from other jurisdictions).

The court of appeals concluded that Whitcomb was personally liable because he was the contracting party and there was no evidence that the corporate status of RHN was disclosed to Benjamin Plumbing. 156 Wis. 2d at 281–82. It emphasized that its holding was premised on agency principles and not upon "piercing the corporate veil" theory, which looks to the wrongful conduct of the defendant. *Id.* at 281–83.

Finally, the court of appeals rejected Whitcomb's contention that sec. 181.287, Stats., independently provided him with statutory immunity. The court noted that the statute only shields a director from liability "arising from a breach of or failure to perform, any duty *resulting solely from his or her status as a director.*" 156 Wis. 2d at 283. Because the court of appeals did not

___

never had any dealings with Benjamin and accordingly were "shielded from personal liability by reason of their status as corporate officers." *Id.* at 279 n.1. The propriety of this ruling is not an issue before this court. At any rate they were not signatory to the contract.

consider Whitcomb's contractual liability to "solely" arise out of or relate to his status as a director of RHN, it deemed sec. 181.287 inapplicable. *Id.* at 284–85.

We granted Whitcomb's petition for review to determine (1) whether an agent is personally liable on a contract where the other party did not have notice of the corporate status of the principal at the time of contracting, and (2) whether sec. 181.287, Stats., provides immunity to a director contracting on behalf of a corporation who is otherwise liable on the contract under common law agency principles.[7]

This court has long adhered to the general rule that, where an agent merely contracts on behalf of a disclosed principal, the agent does not become personally liable to the other contracting party. *See Theuerkauf v. Sutton,* 102 Wis. 2d 176, 188, 306 N.W.2d 651 (1981); *Hooper v. O.M. Corwin Co.,* 199 Wis. 139, 146, 225 N.W. 822 (1929). Under common law agency principles, however, an agent will be considered a party to the contract and held liable for its breach where the principal is only partially disclosed. A principal is considered partially disclosed where, at the time of contracting, the other party has notice that the agent is acting for a principal but has no notice of the principal's corporate or other

---

[7]Whitcomb also argues that he is statutorily immune as a volunteer under sec. 181.297, Stats. We do not address this issue raised for the first time on appeal to this court. *See Hardscrabble Ski Area, Inc. v. First National Bank of Rice Lake,* 42 Wis. 2d 334, 345, 166 N.W.2d 191 (1969); *North Gate Corp. v. North Gate Bowl, Inc.,* 34 Wis. 2d 516, 523, 149 N.W.2d 651 (1967). We note, in any event, that nowhere in the pleadings, affidavits, and exhibits submitted by the defendants to the trial court on summary judgment is there any allegation of Whitcomb's status as a "volunteer" as that term is defined by sec. 181.297(1).

business organization identity. *See Estate of Kaiser,* 217 Wis. 4, 8, 258 N.W. 177 (1935). *See also* Restatement (Second) of Agency, secs. 4(2), 321 (1958).

Where the principal is a business entity and not a natural person, a unique set of problems arises. Varying legal rights and liabilities attach to different types of business organizations, *e.g.,* sole proprietor, partnership, voluntary association, and corporation. Under well accepted legal principles, for example, all partners, as owners of the partnership, are jointly and severally liable for the contractual debts incurred by the partnership. *See Fox Valley Builders Corp. v. Day,* 71 Wis. 2d 785, 791, 238 N.W.2d 748 (1976); sec. 178.12, Stats.

Similarly, when an entity is considered a voluntary association, all members of the association are jointly and severally liable for the association's contractual obligations. *See Elections Board v. Ward,* 105 Wis. 2d 543, 548, 314 N.W.2d 120 (1982). "A voluntary association is defined as individuals who join together for a certain object and are called for convenience by a common name." *Hafenbraedl v. LeTendre for Congress Committee,* 61 Wis. 2d 665, 666, 213 N.W.2d 353 (1974) (quoting *Herman v. United Automobile Aircraft & Agricultural Implement Workers,* 264 Wis. 562, 567, 59 N.W.2d 475 (1953)). It is generally recognized, furthermore, that numerous charitable and religious organizations are unincorporated associations consisting of a large and changing membership. *See* 2 *Williston on Contracts,* sec. 307, pp. 433–34 (3rd ed. 1959).

Where a business entity is a corporation, however, the shareholders, as owners of the corporation, are generally not personally liable for the contractual obliga-

tions of the corporation. *See Sprecher v. Weston's Bar, Inc.,* 78 Wis. 2d 26, 37, 253 N.W.2d 493 (1977). A corporation, be it for profit or not for profit, enters into contracts and incurs liability as a separate legal entity. The limited liability attribute of corporations is in fact what makes this business organization so significant. *See generally* R. Hamilton, *The Law of Corporations,* secs. 2.1, 2.5 (1980).[8]

Where a party is contracting with a business entity, therefore, it makes a considerable difference whether or not it is a corporation on the other side of the bargaining table. If the agent with whom the party contracts is a partner, sole proprietor, or member of a voluntary association, the party may expect that agent to be personally liable on the contract. If the party knows the agent is contracting for a corporation, however, the agent would not be liable on the contract unless he or she expressly assumed such liability. The fact that the agent might also be a director or officer of the corporation is generally irrelevant under agency principles. *See Kiel v. Frank Shoe Mfg. Co.,* 245 Wis. 292, 298-99, 14 N.W.2d 164 (1944).

The general rule that agents are contractually liable where the principal is partially disclosed has produced the rule that an agent is liable where the contracting party is not aware of the corporate status of the princi-

---

[8]As an important exception to this basic rule of nonliability, courts historically have been willing to "pierce the corporate veil" and hold shareholders individually liable where the corporation was inadequately capitalized ("empty shell") or fraudulently used as a mere instrumentality ("alter ego"). *See Consumer's Co-op of Walworth County v. Olsen,* 142 Wis. 2d 465, 419 N.W.2d 211 (1988).

pal. *See* 18B Am. Jur. 2d, *Corporations,* sec. 1833 (1985); 3A *Fletcher Cyc. Corp,* sec. 1120 (rev. ed. 1986).

In applying this rule to cases factually similar to the one before us, numerous courts from other jurisdictions have agreed on the following ancillary principles. It is the agent who seeks to escape liability who has the burden of proving that the principal's corporate status was disclosed. *See Jensen v. Alaska Valuation Service, Inc.,* 688 P.2d 161, 163 (Alaska 1984). Such a duty of disclosure creates no hardship on agents, for it is within their power to relieve themselves of liability. *Howell v. Smith,* 261 N.C. 256, 262, 134 S.E.2d 381 (1964). Conversely, the contracting party does not have any duty to inquire into the corporate status of the principal even when it is within that party's capability of doing so. *Detroit Pure Milk Co. v. Patterson,* 138 Mich. App. 475, 480, 360 N.W.2d 221 (1984). As a matter of fairness, the contracting party should not be saddled with the burden of "ferret[ing] out the record ownership" of the principal's business. *See Van D. Costas, Inc. v. Rosenberg,* 432 So. 2d 656, 659 (Fla. App. 1983).

Because the contracting party needs notice of the principal's corporate status, the use of a trade name is normally not sufficient disclosure. *G.W. Andersen Construction Co. v. Mars Sales,* 210 Cal. Rptr. 409, 412, 164 Cal. App. 3d 326 (1985); *see generally* Annotation, 150 A.L.R. 1303 (1944). The failure to use the "Inc." notation in correspondence between the agent and third party or in the contract itself is often critical in the determination of whether there was adequate disclosure of corporate status. *See, e.g., Delaware Valley Equipment Co., Inc. v. Granahan,* 409 F. Supp. 1011, 1014

851

(E.D. Pa. 1976); *Lagniappe of New Orleans, Ltd. v. Denmark,* 330 So. 2d 626, 626–27 (La. App. 1976).

Finally, whether the contracting party has sufficient notice of the principal's corporate identity is a question of fact. *See Collins v. Brayson Supply Co.,* 157 Ga. App. 438, 278 S.E.2d 87 (1981). The contracting party is generally said to have notice of the "identity of the principal if he knows, has reason to know, or should know of it, or has been given a notification of the fact." *See David v. Shippy,* 684 S.W.2d 586, 588 (Mo. App. 1985) (quoting Restatement (Second), Agency, sec. 4, comment a). There, however, must be more than a mere suspicion of the principal's corporate status. *See A to Z Rental Center v. Burris,* 714 S.W.2d 433, 435 (Tex. App. 1986). The trier of fact may look to the acts and circumstances surrounding the transaction until the time of contracting to determine whether there was actual or constructive notice. *See Como v. Rhines,* 198 Mont. 279, 284, 645 P.2d 948 (1982); *Haas v. Harris,* 347 N.W.2d 838, 840 (Minn. App. 1984). Notice must be given at or prior to the execution of the contract documents. In the case before us the circuit court incorrectly held that Benjamin Plumbing had constructive notice of RHN's corporate status. The error arises from the court's erroneous conception of the law that the burden was on Benjamin. It was on Whitcomb.

In reviewing a grant of summary judgment under sec. 802.08, Stats., we are required to apply the same standards as are to be applied by the trial court. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no material issues of fact, then summary judgment is appropriate where "only one reasonable inference can be drawn from these facts."

*See Ervin v. City of Kenosha*, 159 Wis. 2d 464, 480, 464 N.W.2d 654 (1991).

Based on the record before us, we conclude that the only reasonable inference that can be drawn from the undisputed facts is that Benjamin Plumbing had neither actual nor constructive notice of the corporate identity of the principal, RHN, at the time of contracting with Whitcomb.

First, the trial court found, and Whitcomb concedes, that there was no express disclosure of RHN's corporate status in the contract or correspondence between the parties. The first time Benjamin Plumbing had actual notice that RHN was a Wisconsin corporation was upon receipt of the defendants' answer to its complaint.

Second, the fact that Benjamin Plumbing was aware that Whitcomb was acting on behalf of an entity called RHN reveals nothing of Benjamin's awareness of the type of business organization it was dealing with. All business entities are not corporations. In fact, being an incorporated business itself, Benjamin Plumbing could have reasonably concluded that RHN would have used its corporate name in its firm letterhead, as did Benjamin, if it were in fact a corporation. As previously noted, Benjamin had no affirmative duty to investigate the business ownership record of the principal, RHN. Whitcomb, as an agent, had the obligation to disclose RHN's corporate status in order to prevent incurring liability on the contract.[9] RHN was essentially using a tradename.

---

[9]We note that in *Philipp Lithographing Co. v. Babich*, 27 Wis. 2d 645, 648, 135 N.W.2d 343 (1965), this court applied the analogous rule that "partners who continue to hold themselves out as such after the formation of a corporation cannot escape responsibility for contracts entered into after the change in busi-

Third, the fact that RHN was manifestly a charitable, nonprofit organization does not lead to the inference that it was a corporation. As noted above, RHN might just as well have been an unincorporated association. While there are admittedly only a limited number of types of business organizations, identifying RHN as a corporation as opposed to an unincorporated association without some evidence of that fact would be mere conjecture. The fact that Benjamin Plumbing actually did bring suit against RHN as an unincorporated association and against Whitcomb and the others as its members was certainly reasonable given the lack of corporate identification.

Finally, the fact that Whitcomb did not in so many words expressly assume contractual liability is not dispositive. Clearly, the opposite is also true. Whitcomb did not expressly disavow personal liability on the contract as he so easily could have. It is exactly because there is a lack of express intentions to the contrary that courts have found an implied intention to hold the agent personally liable where the corporate identity of the principal is not disclosed.[10] Whitcomb is liable because he is the contracting party. Had Benjamin Plumbing known RHN was a corporation with limited liability, it might well have taken precautionary measures to protect its interests.[11]

---

ness status without adequate notice that the partnership has been dissolved."

[10]Whitcomb points out that in *Bostwick-Braun Co. v. Szews,* 645 F. Supp. 221 (W.D. Wis. 1986), a Wisconsin federal district court did not find two agents individually liable even though they failed to sign a contract in their corporate capacity. We consider this case factually distinguishable and note, in any event, that we are not bound by this decision.

[11]At oral argument, Benjamin Plumbing suggested that it

Whitcomb points out, however, that the statutes only expressly require nonprofit corporations to use their corporate name when suing and being sued. *See* secs. 181.04(2) and 181.06, Stats. He states that it is well accepted that corporations need not contract in their legal corporate name. *See* 19 C.J.S., *Corporations,* sec. 661 (1990) (previously sec. 1166 (1940)); *cf.,* sec. 181.04(7), Stats. Whitcomb reasons, therefore, as did the circuit court on summary judgment, that an agent should not incur personal liability for the principal's failure to contract in its corporate name.

The legal principles presented by Whitcomb are inapposite. These general rules only relate to the corporate principal's liability on a contract, not the agent's. Clearly, it has long been the rule in Wisconsin that a corporation can be contractually bound even where the corporate name was not used in the contract. *See Woodrough & Hanchett Co. v. Witte,* 89 Wis. 537, 538–39, 62 N.W. 518 (1895). Where the principal's corporate status has not been disclosed, however, the courts have uniformly held the agent liable on the contract as well. *See* 19 C.J.S., *Corporations,* sec. 540 (1990).

In conclusion, Whitcomb's liability stems from the lack of notice to Benjamin Plumbing that the principal, RHN, was in fact a corporation. The burden of giving such notice was upon Whitcomb. Whitcomb's contractual liability is not based on any wrongdoing which would trigger the application of the "corporate veil" doctrine.[12] The undisputed facts do not support any reason-

---

might have requested that a bond be posted or that payment be made through a controlled bank account. We note, however, that proof of prejudice is not a relevant consideration in this decision.

[12]*Fairbanks v. Chambers,* 665 S.W.2d 33 (Mo. App. 1984),

able inference that Benjamin had actual or constructive notice of RHN's corporate identity.

Having determined that Whitcomb is liable under common law agency principles, this court must now determine whether Whitcomb, as a director of a nonprofit corporation, is statutorily immune under sec. 181.287, Stats.

■■■■

In construing a statute, this court must ascertain and give effect to the intent of the legislature. In determining legislative intent, however, first resort must be to the language of the statute itself. *See State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35 (1987). We must give words their ordinary and accepted meanings and try to give effect to every word so as to not render any part of the statute superfluous. *See State v. Sher,* 149 Wis. 2d 1, 9, 437 N.W.2d 878 (1989). "Only when the language of the statute is unclear or ambiguous should this court examine the scope, history, context, subject matter, and object of the statute to discern legislative intent." *Rice v. City of Oshkosh,* 148 Wis. 2d 78, 84, 435 N.W.2d 252 (1989).

Section 181.287, Stats., provides in relevant part that directors and officers of nonprofit corporations are not liable:

> . . . to the corporation, its members or creditors, or any person asserting rights on behalf of the corporation, its members or creditors, or any other person, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director or officer.

cited by Whitcomb in support of his position, only highlights this distinction. *See id.* at 40.

Upon the reading of sec. 181.287, Stats., we agree with the court of appeals that Whitcomb cannot be granted immunity unless his liability related solely to his status as a director of RHN. *See* 156 Wis. 2d at 284-85. Whitcomb's contractual liability to Benjamin Plumbing, however, stems from his position as an agent to a partially disclosed corporate principal and not from his status as a director of RHN. A mere employee or anyone else authorized to contract on behalf of a corporation can be held liable under the partially disclosed agency theory.

While we do not attempt completely to define the contours of director and officer immunity under the statute, we conclude that sec. 181.287, Stats., only limits liability based on a breach of fiduciary duty to the corporation. The legislature's broad extension of immunity to "creditors" and "any other person," however, creates some ambiguity. To the extent directors and officers can be said to only owe general fiduciary obligations to the corporation and not to creditors and other third persons individually (*see McGivern v. Amasa Lumber Co.,* 77 Wis. 2d 241, 260, 252 N.W.2d 371 (1977)), the statutory provisions extending immunity to persons other than those asserting rights on behalf of the corporation or its members might be considered superfluous. Accordingly, we look beyond the four corners of the statute for further indication of legislative intent.

While corporations are statutory creatures, the basic relationship between a corporation and its directors and officers has been established by common law. This court has long recognized that directors and officers can be held liable for a breach of their fiduciary duty to the corporation and its shareholders. *See Rose v. Schantz,* 56 Wis. 2d 222, 228, 201 N.W.2d 593 (1972);

857

*The North Hudson Building and Loan Ass'n v. Childs,*
82 Wis. 460, 475, 52 N.W. 600 (1892). *See generally*
Note, *Degree of Diligence a Director Must Exercise to
Avoid Liability to the Corporation,* 7 Marq. L. Rev. 159
(1922-23).

Throughout the years, however, the legislature has
increasingly attempted to regulate by statute director
and officer liability in respect to both for-profit (ch. 180,
Stats.) and nonprofit (ch. 181) corporations.[13] In 1987,
the corporation statutes were substantially revised and
sec. 180.307 and sec. 181.287 were added. *See* 1987 Act
13, secs. 8, 17. With limited exceptions, sec. 180.307
established that a director of a for-profit corporation was
not liable to the corporation or its shareholders (or those
asserting rights on their behalf) for liabilities "arising
from a breach of, or failure to perform, any duty result-
ing *solely from his or her status as a director.*" Section
180.307(1), 1987-88 (emphasis supplied).

As we have seen, sec. 181.287, Stats., on the other
hand, provided directors *and officers* of nonprofit corpo-
rations with such limited liability and extended it to
obligations owed to *creditors* and *any other person.* In
this regard, the legislative history to sec. 181.287 clearly
suggests that directors and officers of nonprofit corpora-
tions were granted broader immunity than their for-
profit counterparts because of their special organiza-
tional purposes.[14]

---

[13]In 1951, for example, the legislature enacted sec. 180.40,
which enumerated various conditions when directors could be
held liable. *See* L. 1951, ch. 731, sec. 7. That statute specifically
preserved common law principles, however, by stating that the
provisions were "[i]n addition to any other liabilities imposed by
law upon directors of a corporation." *See* sec. 180.40(1), Stats.
1987-88.

[14]The Legislative Council's note to sec. 181.287 provides:

But while the legislature has obviously gone to great lengths to carefully limit the liability of directors of non-profit corporations, we cannot ignore the express language of sec. 181.287, Stats., which focuses on liability claims based "solely" on the defendant's status as a director. As previously noted, Whitcomb's liability to Benjamin Plumbing as an agent for a partially disclosed corporate principal was not solely dependent on his status as a director of RHN.

We recognize the rule that "statutes in derogation of the common law must be strictly construed," *i.e.,* where a "statute would change the common law, the legislative intent to change the common law must be clearly expressed." *See LePoidevin v. Wilson,* 111 Wis. 2d 116, 129-30, 330 N.W.2d 555 (1983). If the legislature had intended to abrogate common law agency principles in such a situation, we do not believe sec. 181.287, Stats., would have been worded as it was. Because Whitcomb's

NOTE: Section 181.287 is based on s. 180.307, created by this bill, providing a liability immunity for directors and officers of corporations organized under ch. 180. As it applies to corporations organized under ch. 181 (nonprofit corporations), the provision is expanded to include liability to creditors and to 3rd parties generally, in addition to liability to the corporation, the corporation's members, or any person asserting rights on their behalf. The special committee concluded that, given the organization and purposes of nonprofit corporations, additional statutory protection from personal liability should be extended to directors and officers of such corporations.

Because the liability protections under s. 181.287 extend to liability to 3rd parties, sub. (2) clarifies that the liability immunity under this section does not apply to proceedings, civil or criminal, brought by or on behalf of a governmental unit or to proceedings brought by any person for any violation of state or federal law where the proceeding is brought pursuant to an express private right of action created by state or federal statute.

1987 Assembly Bill 301, p. 36 (Wisconsin Assembly Bills 1987, 301-335).

liability is not solely dependent on his status as director of RHN, we conclude that sec. 181.287 does not provide him with any immunity. He is liable as an agent of a partially disclosed principal in circumstances where he never, at or before the execution of the contract, assumed the burden of giving notice of his principal's corporate status. Accordingly, he is liable as a party to the contract.

*By the Court.*—Decision affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I dissent because I conclude that this case cannot be decided as a matter of law on summary judgment.

The applicable rule of law is that in the absence of a manifestation to the contrary, there is an inference that an agent as well as the partially disclosed principal are parties to a contract. Restatement (Second) of Agency, secs. 4(2), 147, 321 (1958). "It is sometimes stated that if an agent discloses the fact that he is an agent, but not the name of his principal, he is personally liable. This, however, is not literally true. It is possible by language clearly indicating that the agent intends to assume no liability, and that all rights and liabilities are to be those of an unnamed principal, to produce the desired result."*

Whether Benjamin Plumbing, Inc., had sufficient notice of the principal's corporate identity and whether it intended to contract only with the partially disclosed principal, not the individual agent, are questions of fact to be determined at trial.

In this case no single written document constituting the contract was signed. Defendant Whitcomb met with a representative of Benjamin Plumbing and wrote to

---

*2 Williston, Contracts, sec. 285. p. 335–336 (3d ed. Jaeger ed. 1959). See also Comment, sec. 321, Restatement (Second) of Agency, p. 70 (1959).

Benjamin Plumbing on business stationery, signing as a representative of Response to Hunger Network. Benjamin Plumbing's written estimate was addressed to Response to Hunger Network and more specifically to "To Whom it May Concern." Benjamin Plumbing's Application and Certificate for Payment was addressed to Response to Hunger Network. Mr. Whitcomb's name does not appear on any documents Benjamin Plumbing sent to Response to Hunger Network.

The documents filed with the motion for summary judgment show that Benjamin Plumbing knew an entity was involved and addressed all its communications apparently constituting the contract to the entity, not to the individual defendants named in this action.

The affidavit filed on behalf of Benjamin Plumbing asserts that the defendants individually contracted with Benjamin Plumbing and that Response to Hunger Network was not a party "to the contractual undertakings named in the plaintiff's complaint." Whitcomb's affidavit asserts that he "contacted and corresponded with Benjamin Plumbing solely on behalf of Response to Hunger Network, Inc." The parties dispute facts and the reasonable inferences from undisputed facts. I conclude that under these circumstances summary judgment is inappropriate. A trial is necessary.

For the reasons set forth, I dissent.